# EXHIBIT A



# ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.

160 Federal Street, 6th Floor, Boston, MA 02110· Tel. (857) 288-6000 · Fax (617) 556-8060

(hereinafter called the Company)

## COMMERCIAL PROPERTY POLICY
## DECLARATIONS

**POLICY NUMBER:**    0310-2242-1A                    **RENEWAL OF:** New

**ITEM 1.**
**Named Insured:** Crosswater Canyon, Inc.

**Address:**    15 Grandview Heights, Williamstown, KY  41097

**ITEM 2. Policy Period:**
**From:**    July 01, 2016                        **To:** July 01, 2017
**at 12:01 A.M. Standard Time at the location of property insured as stated in the Schedule of Locations.**

**ITEM 3. Limit of Insurance:**    $5,000,000 Part of $10,000,000 Primary per Occurrence, Except Annual Aggregate applies, as respects Perils of Flood and Earthquake

**See attached Forms and Endorsements, for Sublimits which may apply to these or to other Perils or Coverages.**

| | |
|---|---|
| **Premium, all Coverages Excluding Terrorism:** | $ 66,728 |
| **Premium, Terrorism Coverage:** | $      0. |
| **Total Premium, All Coverages:** | $ 66,728 |

In the event of cancellation of this policy by the Insured, a minimum premium of $23,355 shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium within 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

**ITEM 4. Perils:**    All Risk of Direct Physical Loss or Damage Including Flood, Earthquake and Boiler & Machinery, Excluding Terrorism, Excluding Earthquake in Alaska, California, Hawaii, New Madrid, Oregon, Puerto Rico and Washington

**ITEM 5. Description of Property Covered:**                **ITEM 6. Coinsurance:**
Real and Personal Property, Business Interruption, Extra Expenses, Loss of Rents

**ITEM 7. Forms Attached:**
See attached Forms Schedule

APDP 0001  0609                                1

**ITEM 8. Producer:**

Marsh USA, Inc
1166 Avenue of the Americas
New York, NY 10036

**ITEM 9. SERVICE OF SUIT CLAUSE**

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 160 Federal Street, 6th Floor, Boston, MA 02110, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**ITEM 10. GOVERNMENT ACTIVITY CLAUSE**

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS HEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in these Declarations by one of our duly authorized representatives.

_____
Authorized Representative

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

ATTN: Claim Department
Allied World Assurance Company, (U.S.), Inc.
160 Federal Street, 6th Floor
Boston, MA 02110
awacus.propertyclaims@awac.com

ATTN: Legal Department
Allied World Assurance Company, (U.S.), Inc.
160 Federal Street, 6th Floor
Boston, MA 02110

APDP 0001  0609                    2

## FORMS SCHEDULE

**Named Insured:** Crosswater Canyon, Inc.

**Policy No:** 0310-2242-1A

**Effective Date:** 07/01/2016

| Form Number | Edition Date | End't Number | Title: |
|---|---|---|---|
| APDP 0001 | 06 09 | | Declarations Page |
| PSC 0007 99 | 06 09 | | Schedule of Covered Locations |
| PEN 0011 99 | 06 09 | | Standard Property Conditions |
| | | | Property Coverage Form |
| PEN 0012 99 | 06 09 | | Property Millennium Endorsement |
| PEN 0013 99 | 06 09 | | War Risk and Terrorism Exclusion |
| PEN 0014 99 | 06 09 | | Pollution, Contam'n, Debris Removal |
| PEN 0015 99 | 06 09 | | Mold/Fungus Exclusion |
| PEN 0016 99 | 06 09 | | Data Corruption Endorsement |
| PEN 0018 99 | 06 09 | | Newly-Acquired Location Limitation |
| PEN 0005 99 | 06 09 | | Occurrence Limit of Liability |
| PEN 0024 99 | 06 09 | | Margin Clause |
| PEN 0038 99 | 06 09 | | Earthquake Limitation |
| PEN 0700 | 01 15 | | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act - Blank |

PSC 0006 99  0609

FIRE

## Schedule of Covered Locations

**Policy Number:**          0310-2242-1A

**Issued to:**     Crosswater Canyon, Inc.

| Description of Premises | Limit | Percent of Coinsurance |
|---|---|---|
| Arc Encounter<br>Arc Encounter Drive<br>Williamstown, KY  41097 | $5,000,000. part of $10,000,000.<br>Primary per Occurrence,<br>Annual Aggregate applies<br>To the Perils of Flood and<br>Earthquake | Nil |

PSC 0007 99  0609

## ALLIED WORLD ASSURANCE COMPANY, (U.S.) INC.
### Standard Property Conditions

This endorsement effective 07/01/2016    forms part of Policy Number 0310-2242-1A
Issued to:  Crosswater Canyon, Inc.
By: Allied World Assurance Co., (U.S.) Inc. (hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the Insured, a minimum premium of $ 23,355 . shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of $*** shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

**\*\*\*Coverage under this Policy is excess of  Deductibles and Waiting Periods as contained within Pages 9 through 11 of the Coverage Form.**

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 90 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 160 Federal St., 6th Floor, Boston, MA 02110, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 160 Federal St., 6th Floor, Boston, MA 02110.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS HEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of our duly authorized representatives.

ENDORSEMENT

This Endorsement, Effective 12:01 AM:    07/01/2016

Forms a part of Policy No.:    0310-2242-1A

Issued to:    Crosswater Canyon, Inc.

By:    ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.

PROPERTY MILLENNIUM ENDORSEMENT

It is noted and agreed this policy is hereby amended as follows:

A    The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip),integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

    1    correctly recognize any date as its true calendar date;

    2    capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

    3    capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B    It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C    It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril.

Defined Peril shall mean fire, lightning, explosion aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow.

In consequence of all the foregoing the Annual Premium remains unaltered.

All other terms, conditions and exclusions of this policy remain unchanged.

## ENDORSEMENT

**This endorsement, effective 12:01 AM:**  07/01/2016

**Forms a part of Policy No.:**    0310-2242-1A

**Issued to:**  Crosswater Canyon, Inc.

**By:**  Allied World Assurance Co. (U.S.) Inc.

### WAR RISK AND TERRORIST EXCLUSION

It is hereby understood and agreed, that notwithstanding any other war risk or terrorist exclusion that may be in the policy or any clause limiting or attempting to limit the application of any endorsements to the policy, this policy is amended as follows:

The policy does not cover loss or damage to property caused by, resulting from, contributed to or aggravated by any of the following perils, whether such loss or damage is accidental or intentional, intended or unintended, direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any perils insured by the policy:

1   war, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

   (a) by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

   (b) by military, naval or air forces; or

   (c) by an agent of any such government, power, authority or force.

2   any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

3   insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

4   any act of one or more persons, whether known or unknown and whether or not agents of a sovereign power, for Terrorist purposes;

5   hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons, for Terrorist purposes.

Such loss or damage is excluded regardless of any other cause, event or intervention that contributes concurrently or in any sequence to the loss or damage.

Terrorist purpose means the use or threatened use of any unlawful means, including the use of force or violence against any person(s) or property (ies), for the actual or apparent purpose of intimidating, coercing, punishing or affecting society or some portion of society or government.

All other terms, conditions and exclusions of the policy remain unchanged.

PEN 0013 99  0609

Endorsement Effective Date, 12:01 Standard Time:  07/01/2016

Policy No.:  0310-2242-1A

Name of Insured:    Crosswater Canyon, Inc.

Issued By:  Allied World Assurance Co., (U.S.), Inc.

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

1. Property Not Covered

   This policy does not cover land, land values or water.

2. Pollution and Contamination Exclusion.

   This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

   Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

   CONTAMINANTS OR POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

3. Asbestos Exclusions

   This policy does not cover -

   a) Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or  structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.

   b) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

PEN 0014 99  0609                                    1

c) Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The coverage afforded does not apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

4. Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a) Extract contaminants or pollutants from the debris; or

b) Extract Contaminants or pollutants from land or water; or

c) Remove, restore or replace contaminated or polluted land or water; or

d) Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5. Authorities Exclusion

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

ENDORSEMENT

**Effective 12:01 AM:** 07/01/2016

**Forms a part of Policy No.:** 0310-2242-1A

**Issued to:** Crosswater Canyon, Inc.

**By:**    ALLIED WORLD ASSURANCE CO., (U.S.) INC.

MOLD / FUNGUS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s),mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

a)  fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;
b)  mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);
c)  spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

However, this exclusion shall not apply when the loss or damage is directly caused by a "Specified Covered Peril" and provided that such loss or damage is reported to the company within 12 months from the expiration date of the policy.

"Specified Covered Peril", as used above, means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing systems, falling objects, weight of snow or ice or sleet, water damage.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

PEN 0015 99  0609

ENDORSEMENT

This endorsement, Effective 12:01 AM: 07/01/2016

Forms a part of Policy No.: 0310-2242-1A

Issued to: Crosswater Canyon, Inc.

By: ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.

## DATA CORRUPTION PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

PEN 0016 99 0609

**Effective 12:01 AM:**   07/01/2016

**Forms a part of Policy No.:**   0310-2242-1A

**Issued to:**   Crosswater Canyon, Inc.

**By:**  Allied World Assurance Co., (U.S.) Inc.

## NEWLY-ACQUIRED LOCATIONS LIMITATION

It is understood and agreed that the addition of newly-acquired locations within Tier 1 Wind Zones, Zone A or V Flood areas, or within California Earthquake Zones A & B is not permitted without prior written approval and pricing by Allied World Assurance Company (U.S.), Inc

PEN 0018 99  0609

**This Endorsement, Effective 12:01 AM:** 07/01/2016

**Forms a part of Policy No.:** 0310-2242-1A

**Issued to:** Crosswater Canyon, Inc.

**By:** ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is understood and agreed that the following special terms and conditions apply to this policy:

1.  The limit of liability or Amount of Insurance shown on the face of this policy, or endorsement onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved

    The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event.

    a.  When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the covered property occurs.

    b.  When the term applies to loss from the peril of earthquake, one event shall be construed to be all loss arising during a continuous period of 168 hours. When filing proof of loss, the Insured may elect the moment at which the 168 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the covered property occurs.

2.  The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

    a.  The actual adjusted amount of loss, less applicable deductible(s).

    b.  The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s).

    c.  The limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

PEN 0005 99  0609

**This Endorsement, Effective 12:01 AM:**  07/01/2016

**Forms a part of Policy No.:**  0310-2242-1A

**Issued to:**  Crosswater Canyon, Inc.

**By:**    ALLIED WORLD ASSURANCE CO., (U.S.) INC.

## MARGIN CLAUSE

In the event of loss hereunder, liability of the Company shall be limited to the least of the following.

A.    The actual adjusted amount of loss, less applicable deductible(s) or self-insured retention(s).

B.    **125%** of the individually stated value for each scheduled item of property, time element, or other coverages shown on the latest Statement of Values on file with the Company, less applicable deductible(s) or self insured retention(s).   If Actual Cash Value applies, then the maximum amount payable is 100%.

C.    The Limit of Liability, Amount of Insurance or sublimit is shown or endorsed onto the Policy.  If a sublimit is shown on the policy, the lesser limit shall apply.

D.    The maximum amount payable under the Coinsurance Clause.

PEN 0024 99  0609

**This endorsement, effective 12:01 AM:** 07/01/2016

**Forms a part of Policy No.:** 0310-2242-1A

**Issued to:** Crosswater Canyon, Inc.

**By:** ALLIED WORLD ASSURANCE COMPANY (U.S.), INC

### EARTHQUAKE LIMITATION

It is hereby understood and agreed that no coverage is provided under this policy for the peril of earthquake occurring in the following states and/or territories:

California, Hawaii, Alaska and Puerto Rico, New Madrid, Oregon, Puerto Rico, and Washington

PEN 0038 99  0609

Policy No:

Insured Name:

Policy Term:

Issued By: Allied World Assurance Co. (U.S.) Inc.

## POLICYHOLDER DISCLOSURE STATEMENT UNDER THE TERRORISM RISK INSURANCE ACT

The insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events. Under the formula, the United States Government will generally reimburse 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible that must be met by the Company, and which deductible is based on a percentage of the Company's direct earned premiums for the year preceding the Certified Act of Terrorism.

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year and the Company has met its deductible under the Act, the Company shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Certified Acts of Terrorism.

**The insured should know that under federal law, the insured is not required to purchase coverage for losses caused by Certified Acts of Terrorism. Unless the insured signs this form and returns it to the Company to indicate the insured's rejection of Terrorism Coverage under the Federal Act, the insured will be covered for Terrorism as defined in the Act and the premium for that coverage is $_____**

The insured hereby rejects coverage in accordance with the Act.

_____
Signature of Insured

_____
Print Name/Title

_____
Date

Domestic



# Crosswater Canyon, Inc.

## MANUSCRIPT POLICY FORM

### TABLE OF CONTENTS

**DECLARATIONS** ........................................................................................................**5**

    **A.**    **INSURED** ..................................................................................................**5**

    **B.**    **MAILING ADDRESS** ............................................................................**5**

    **C.**    **PREMIUM** ...............................................................................................**5**

    **D.**    **TERM OF INSURANCE** ......................................................................**5**

    **E.**    **PARTICIPATION** ..................................................................................**6**

    **F.**    **LIMITS OF LIABILITY** ......................................................................**6**

    **G.**    **DEDUCTIBLE(S)** ..................................................................................**9**

    **H.**    **WAITING PERIOD(S)** ........................................................................**10**

    **I.**    **TERRITORY** ..........................................................................................**11**

    **J.**    **ASSIGNED ADJUSTER** ......................................................................**11**

**POLICY PROVISIONS** ...........................................................................................**12**

    **1.**    **PERILS INSURED AGAINST** ...........................................................**12**

    **2.**    **COVERAGE** ...........................................................................................**12**

        **A.**    Real and Personal Property ......................................................**12**

        **B.**    Business Interruption ...............................................................**13**

        **C.**    Extra Expense ...............................................................................**14**

        **D.**    Rental Value ..................................................................................**14**

        **E.**    Royalties .........................................................................................**14**

        **F.**    Delay in Completion of the Project ......................................**15**

        **G.**    Time Element Extensions ........................................................**16**

        **H.**    Provisions Applicable to Business Interruption, Extra Expense, Rental Value, Royalties Coverages, Delay in Completion of the Project and Time Element Extension ...................**17**

        **I.**    Transit .............................................................................................**19**

        **J.**    Accounts Receivable ..................................................................**20**

        **K.**    Leasehold Interest .....................................................................**21**

    **3.**    **COVERAGE EXTENSIONS** ...............................................................**22**

        **A.**    Brands or Trademarks ...............................................................**22**

        **B.**    Consequential Loss ....................................................................**23**

Domestic



# Crosswater Canyon, Inc.,

# MANUSCRIPT POLICY FORM

## TABLE OF CONTENTS

**DECLARATIONS** .................................................................................................5

    A.   INSURED ...................................................................................5

    B.   MAILING ADDRESS ..................................................................5

    C.   PREMIUM ...................................................................................5

    D.   TERM OF INSURANCE .............................................................5

    E.   PARTICIPATION .......................................................................6

    F.   LIMITS OF LIABILITY ..............................................................6

    G.   DEDUCTIBLE(S) ........................................................................9

    H.   WAITING PERIOD(S) ..............................................................10

    I.   TERRITORY .............................................................................11

    J.   ASSIGNED ADJUSTER ...........................................................11

**POLICY PROVISIONS** ......................................................................................12

    1.   PERILS INSURED AGAINST ..................................................12

    2.   COVERAGE ..............................................................................12

        A.   Real and Personal Property ............................................12

        B.   Business Interruption .....................................................13

        C.   Extra Expense .................................................................14

        D.   Rental Value ....................................................................14

        E.   Royalties ..........................................................................14

        F.   Delay in Completion of the Project ...............................15

        G.   Time Element Extensions ...............................................16

        H.   Provisions Applicable to Business Interruption, Extra Expense, Rental Value, Royalties Coverages, Delay in Completion of the Project and Time Element Extension ....................17

        I.   Transit .............................................................................19

        J.   Accounts Receivable ......................................................20

        K.   Leasehold Interest ..........................................................21

    3.   COVERAGE EXTENSIONS .....................................................22

        A.   Brands or Trademarks .....................................................22

        B.   Consequential Loss .........................................................23

Domestic

C.   Consequential Reduction in Value ................................................................... 23
D.   Control of Damaged Goods ............................................................................. 23
E.   Debris Removal and Cost of Clean-up ............................................................ 23
F.   Decontamination Costs of Insured Property ................................................... 23
G.   Defense Costs .................................................................................................. 24
H.   Demolition and Increased Cost of Construction ............................................. 24
I.   Expediting Expense ......................................................................................... 25
J.   Fire Department Charges and Extinguishing Expenses .................................. 25
K.   Land and Water Contaminant or Pollutant Clean-up, Removal and Disposal ...... 25
L.   Loss Adjustment Expenses ............................................................................. 26
M.   Sequential Loss ............................................................................................... 26
N.   Tax Treatment of Profits ................................................................................. 26
4.   PERILS EXCLUDED ....................................................................................... 27
5.   PROPERTY EXCLUDED ................................................................................. 30
6.   VALUATION ..................................................................................................... 31
A.   Stock ................................................................................................................ 31
B.   Real and Personal Property ............................................................................. 32
7.   ACCIDENT ....................................................................................................... 34
8.   NEWLY ACQUIRED LOCATIONS ................................................................ 34
9.   CONTRIBUTING INSURANCE ...................................................................... 34
10.   EXCESS INSURANCE ..................................................................................... 34
11.   UNDERLYING INSURANCE .......................................................................... 34
12.   OTHER INSURANCE ....................................................................................... 35
13.   PRIORITY OF PAYMENTS ............................................................................. 35
14.   EXCESS PARTICIPATION CLAUSE .............................................................. 35
15.   SUBROGATION ................................................................................................ 37
16.   SALVAGE AND RECOVERIES ...................................................................... 37
17.   MACHINERY .................................................................................................... 38
18.   SUSPENSION .................................................................................................... 38
19.   ERRORS OR OMISSIONS ................................................................................ 38
20.   NOTICE OF LOSS ............................................................................................ 38
21.   PROOF OF LOSS .............................................................................................. 38
22.   LOSS PAYABLE ............................................................................................... 38
23.   PARTIAL PAYMENT OF LOSS ...................................................................... 39
24.   APPRAISAL ...................................................................................................... 39

Domestic

| | | | |
|---|---|---|---|
| C. | Consequential Reduction in Value | | 23 |
| D. | Control of Damaged Goods | | 23 |
| E. | Debris Removal and Cost of Clean-up | | 23 |
| F. | Decontamination Costs of Insured Property | | 23 |
| G. | Defense Costs | | 24 |
| H. | Demolition and Increased Cost of Construction | | 24 |
| I. | Expediting Expense | | 25 |
| J. | Fire Department Charges and Extinguishing Expenses | | 25 |
| K. | Land and Water Contaminant or Pollutant Clean-up, Removal and Disposal | | 25 |
| L. | Loss Adjustment Expenses | | 26 |
| M. | Sequential Loss | | 26 |
| N. | Tax Treatment of Profits | | 26 |
| 4. | PERILS EXCLUDED | | 27 |
| 5. | PROPERTY EXCLUDED | | 30 |
| 6. | VALUATION | | 31 |
| | A. | Stock | 31 |
| | B. | Real and Personal Property | 32 |
| 7. | ACCIDENT | | 34 |
| 8. | NEWLY ACQUIRED LOCATIONS | | 34 |
| 9. | CONTRIBUTING INSURANCE | | 34 |
| 10. | EXCESS INSURANCE | | 34 |
| 11. | UNDERLYING INSURANCE | | 34 |
| 12. | OTHER INSURANCE | | 35 |
| 13. | PRIORITY OF PAYMENTS | | 35 |
| 14. | EXCESS PARTICIPATION CLAUSE | | 35 |
| 15. | SUBROGATION | | 37 |
| 16. | SALVAGE AND RECOVERIES | | 37 |
| 17. | MACHINERY | | 38 |
| 18. | SUSPENSION | | 38 |
| 19. | ERRORS OR OMISSIONS | | 38 |
| 20. | NOTICE OF LOSS | | 38 |
| 21. | PROOF OF LOSS | | 38 |
| 22. | LOSS PAYABLE | | 38 |
| 23. | PARTIAL PAYMENT OF LOSS | | 39 |
| 24. | APPRAISAL | | 39 |

Domestic

25.  PAIR OR SET .................................................................................................39

26.  ASSISTANCE AND COOPERATION OF THE INSURED ...................................39

27.  SUE AND LABOR ...........................................................................................39

28.  PAYMENT OF LOSS .......................................................................................40

29.  REINSTATEMENT ..........................................................................................40

30.  SUIT AGAINST THE COMPANY ......................................................................40

31.  EVIDENCE OF INSURANCE ...........................................................................41

   A.   Certificates of Insurance ......................................................................41

   B.   Memoranda of Insurance .....................................................................41

32.  MORTGAGEHOLDERS CLAUSE .....................................................................41

33.  CANCELLATION ...........................................................................................43

34.  NON-RENEWAL ............................................................................................43

35.  VALUES .......................................................................................................43

36.  TITLES OF PARAGRAPHS ..............................................................................44

37.  CONFORMANCE ...........................................................................................44

38.  CROSS LIABILITIES ......................................................................................44

39.  ABANDONMENT ...........................................................................................44

40.  ASSIGNMENT ...............................................................................................44

41.  LIBERALIZATION .........................................................................................44

42.  BREACH OF WARRANTY ...............................................................................44

DEFINITIONS ...........................................................................................................46

   A.   Accident ..............................................................................................46

   B.   Ammonia Contamination .....................................................................47

   C.   Company(ies) .......................................................................................47

   D.   Data ....................................................................................................47

   E.   Earthquake ..........................................................................................47

   F.   Fine Arts ..............................................................................................47

   G.   Finished Stock ......................................................................................47

   H.   Flood ...................................................................................................47

   I.   Fungus .................................................................................................48

   J.   Land Improvements ..............................................................................48

   K.   Media ..................................................................................................48

   L.   Merchandise ........................................................................................48

   M.   Miscellaneous Unnamed Location .........................................................48

   N.   Named Windstorm ...............................................................................48

Domestic

O.   Occurrence ................................................................................................................49

P.   Ordinary Payroll .......................................................................................................50

Q.   Policy ........................................................................................................................50

R.   Pollutant ...................................................................................................................50

S.   Program ....................................................................................................................50

T.   Raw Stock .................................................................................................................50

U.   Securities ..................................................................................................................51

V.   Soft Costs ..................................................................................................................51

W.   Special Flood Hazard Areas (SFHA) .......................................................................51

X.   Sprinkler Leakage .....................................................................................................52

Y.   Stock in Process ........................................................................................................52

Z.   Storm Surge ..............................................................................................................52

AA.  Time Element ............................................................................................................52

BB.  Valuable Papers and Records ...................................................................................52

CC.  Water Damage ..........................................................................................................53

ADDENDUM A – New Madrid Earthquake Zone Counties.......................................................54

ADDENDUM B – Pacific Northwest Earthquake Zone Counties and Cities .............................55

ADDENDUM C – Wind Counties..............................................................................................56

Domestic

# DECLARATIONS

## A.  INSURED

This **Policy** insures:

### Crosswater Canyon, Inc.,

and its affiliated, parent and subsidiary companies and/or corporations, including any limited liability companies in which any insured entity is a partner or member and any partnership or joint venture in which any of the preceding entities have a majority interest or management control or are responsible to insure, all as now exist or may hereafter be constituted or acquired, and any party in interest which any of the preceding entities are responsible to insure, hereinafter referred to as "the **Insured**", including its legal representatives.

With respect to partnerships and joint ventures in which any of the preceding entities do not have a majority interest or management control or are not responsible to insure, then only the **Insured's** interest in such partnerships or joint ventures shall be insured under this **Policy**.

## B.  MAILING ADDRESS

15 Grandview Heights, Williamstown, KY 41097;
West of I-75 and KY-36 Interchange

## C.  PREMIUM

US$66,728.  for the **Company's** participation shown below.

## D.  TERM OF INSURANCE

In consideration of the premium stated herein, this **Policy** attaches and insures from July 1, 2016 to July 1, 2017, beginning and ending at 12:01A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this **Policy**.

Domestic

## E.    PARTICIPATION

The **Company** agrees that its participation in this **Program** is as follows:

| Company Issuing Paper: | | Allied World Assurance Co., (U.S.) Inc. | | | |
|---|---|---|---|---|---|
| Policy Number: | | 0310-2242-1A | | | |
| Row | Layer | Company Participation Percentage | Company Limit | Gross Layer Premium | Company Gross Premium |
| 1 | US$10,000,000 Excess of Deductible(s) | 50% | US$5,000,000 | US$133,456 | US$66,728 |
| 2 | US$_____ Excess of US$_____ | ___% | US$_____ | US$_____ | US$_____ |
| 3 | US$_____ Excess of US$_____ | ___% | US$_____ | US$_____ | US$_____ |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |

The **Company** shall not be liable for more than its proportionate share of each layer shown in the Participation Clause, for any one **Occurrence** (the **Company**'s participation) except the **Company**'s liability shall not exceed its proportionate share of any of the specific sublimits of liability for any one **Occurrence** designated in Clauses F.(2), F.(3) and F.(4). These sublimits are part of and not in addition to the limit(s) of liability stated below.

## F.    LIMITS OF LIABILITY

(1)    The **Program** limit of liability is US$79,711,804.

(2)    Sublimits below are applicable to all direct physical loss, damage or destruction insured against, except an **Accident.**

   (a)    With respect to all losses caused by the peril of **Flood**, the **Company** shall not be liable, in the aggregate for any one **Policy** year, for more than its proportionate share of US$25,000,000;

Domestic

But not to exceed US$5,000,000 in the aggregate for any one **Policy** year for the peril of **Flood** occurring in **Special Flood Hazard Areas**. However, this **Special Flood Hazard Area** sublimit shall not apply to loss involving personal property, buildings, or structures wholly located outside an area designated as a **Special Flood Hazard Area**.

The aggregate limit stated in the paragraph above shall be part of the overall aggregate limit stated in the introduction to this paragraph.

Even if the peril of **Flood** is the predominant cause of direct physical loss, damage or destruction, any ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein shall not be subject to the sublimit or aggregate specified in this paragraph (a).

(b) With respect to all losses caused by the peril of **Earthquake**, the **Company** shall not be liable, in the aggregate for any one **Policy** year, for more than its proportionate share of US$25,000,000; except for the following separate aggregate limits:

Even if the peril of **Earthquake** is the predominant cause of direct physical loss, damage or destruction, any ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein shall not be subject to the sublimit or aggregate specified in this paragraph (b).

(c) With respect to the peril of **Named Windstorm** occurring in the Counties as identified in Addendum C, the **Company** shall not be liable for more than its proportionate share of US$75,000,000;

Even if the peril of **Named Windstorm** is the predominant cause of direct physical loss, damage or destruction, any ensuing physical loss, damage or destruction arising from a peril not defined as **Named Windstorm**, and not otherwise excluded herein, shall not be subject to the sublimit specified in this paragraph (c).

(d) US$1,000,000 with respect to property in transit;

(e) US$2,500,000 with respect to property while in the course of construction, erection, installation, and assembly including materials and supplies associated therewith and including Delay in Completion of the Project coverage, all at locations that are not scheduled on this **Policy** or listed on a schedule on file with the **Company**;

With respect to the sub-limits described in (2)(a), (2)(b), and (2)(c) above, such sublimit(s) shall be the maximum amount collectible in any one **Occurrence**, irrespective of any other coverages and sub-limits that may be applicable.

(3) Sub-limits and time limits below are applicable to all direct physical loss, damage or destruction, including **Accident**. The Company shall be liable for its proportionate share of these limits.

Domestic

(a) US$5,000,000 with respect to Newly Acquired Locations for all coverages insured against for up to 90 days, after which the **Miscellaneous Unnamed Locations** sublimit applies if the location is not reported;

(b) US$5,000,000 with respect to **Miscellaneous Unnamed Locations** for all coverages insured against;

(c) US$2,500,000 with respect to Ingress/Egress described under paragraph 2.G. (3) for up to 60 days Period of Recovery, subject to a 5 mile distance limitation.

(d) US$2,500,000 with respect to Interruption by Civil or Military Authority described under paragraph 2.G. (2) for up to 60 days Period of Recovery, subject to a 5 mile distance limitation.

(e) US$1,000,000 in the aggregate for any one policy year with respect to coverage described under Clause 3.K., Land and Water Contaminant or Pollutant Clean-up, Removal and Disposal;

(f) US$1,000,000 with respect to coverage described under Clause 3.F., Decontamination Costs of Insured Property;

(g) US$10,000,000 with respect to coverage described under Clause 3.E., Debris Removal and Cost of Clean-up;

(h) Extended Period of Indemnity: Period of Recovery 365 days.

(i) US$5,000,000 with respect to Account Receivable

(j) US$2,500,000 with respect to Contingent Business Interruption & contingent Extra Expense

(k) US$7,500,000 with respect to Demolition and Increased Cost of Construction

(l) US$2,500,000 with respect to Errors and Omissions

(m) US$5,000,000 with respect to Expediting Expense

(n) US$10,000,000 with respect to Extra Expense

(o) US$2,500,000 with respect to Fine Arts

(p) US$250,000 with respect to Fire Department Service Charges

(q) US$1,000,000 with respect to Leasehold Interest

(r) US$1,000,000 with respect to Loss Adjustment Expense

(s) US$2,500,000 with respect to Sue and Labor

Domestic

(t)   US$2,500,000 with respect to Service Interruption

(u)   US$1,000,000 with respect to Land Improvements

(v)   US$1,000,000 with respect to Valuable Papers and Records

(w)   US$2,250,000 with respect to Outdoor Property (maximum $10,000 per any one item)

(x)   US$1,000,000 in the aggregate with respect to Mold caused by a Covered Loss

With respect to the sublimits described in (4)(a) and (4)(b) above, such sublimit(s) shall be the maximum amount collectible in any one **Occurrence**, unless a lower sublimit for any coverage or peril is otherwise specified within this policy.

**G.   DEDUCTIBLE(S)**

All losses, damages or expenses arising out of any one **Occurrence** shall be adjusted as one loss, and from the amount of such total adjusted loss US$25,000  shall be deducted, except:

(1)   US$100,000 for loss caused by the peril of **Flood**

The above deductibles shall not apply to ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein.

(2)   US$100,000 for loss caused by the peril of **Earthquake;**

The above deductibles shall not apply to ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein.

The above deductible(s) shall not apply to ensuing loss, damage or destruction arising from a peril not otherwise excluded herein and not described in the **Named Windstorm** definition under the Definitions Section of this **Policy**.

(3)   US$25,000 with respect to direct physical loss, damage or destruction resulting from any one **Accident.**

Deductible Application

(a)   In the event of loss involving Underlying Insurance, such as insurance through the National Flood Insurance Program (NFIP), and this **Policy**, the deductible applicable hereunder shall be reduced by the amount of loss payable under such Underlying Insurance Policy(ies).  Should the amount of loss payable and collectible under such Underlying Insurance Policy(ies) exceed the applicable deductible under this **Policy**, then no deductible shall apply hereunder.  However, if the amount to be paid and collectible under such Underlying Insurance Policy(ies) is less than the applicable deductible under this **Policy**, then the amount to be deducted hereunder shall not exceed the difference between the amount to be paid and collectible under the Underlying

Domestic

Insurance Policy(ies) and the applicable deductible under this **Policy**. Only those losses insured under both the Underlying Insurance Policy(ies) as well as this **Policy** shall be recognized.

(b)    The following shall be considered a separate Unit of Insurance:
  (i)    Each separate building or structure;
  (ii)    The contents of each separate building or structure;
  (iii)    Property in the open;
  (iv)    Business Interruption as defined in Clauses 2.B. in the Policy Provisions Section of this **Policy**, being the Net Profit and all continuing charges and expenses which would have been earned for the twelve month period immediately following the date of direct physical loss, damage or destruction had no loss occurred at the location sustaining such direct physical loss, damage or destruction and at all other locations affected by such direct physical loss, damage or destruction.

(c)    If two or more deductible amounts in this **Policy** apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible.

(d)    For any deductible expressed as a percentage of value per Unit of Insurance, the deductible to be applied to an **Occurrence** shall be the total of all individual percentage deductibles applied to the separate values of property suffering the direct physical loss, damage or destruction and for which a claim is being made under this **Policy**.

(e)    The percentage deductibles shown above shall not apply to the extensions of coverage described under paragraphs (1) through (3) of Clause 2.G., Time Element Extensions in the Policy Provisions. In such instance, the dollar deductible amount otherwise applicable shall apply.

(f)    The term Actual Value shall mean the value of property insured calculated in accordance with the **Policy's** Valuation Clause 6. in the Policy Provisions as of the date of the **Occurrence**.

(g)    In any **Occurrence** where direct physical loss, damage or destruction is caused by more than one peril insured against under this **Policy**, the **Insured** shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s) specified in this Section, notwithstanding the above reference to two or more deductibles and the **Policy** limits.

## H.    WAITING PERIOD(S)

For the purposes of applying Service Interruption coverage, the Waiting Period is 24 hours.

Waiting Period means the time period indicated above where the **Company** shall have no liability for the **Time Element** loss when the Period of Recovery applicable to all **Time Element** loss is equal to or less than such indicated time period.

Domestic

If, however, the Period of Recovery exceeds such indicated time period then the **Company**'s liability for the **Time Element** loss shall otherwise apply and the Period of Recovery shall be measured from the inception of the **Occurrence** for which loss is being claimed. The applicable deductible shall then apply.

If more than one location is involved in an **Occurrence** for which the Waiting Period is applicable, only those location(s) where the Period of Recovery exceeds the time period so stated shall be considered in the loss payment.

I.    <u>**TERRITORY**</u>

J.    <u>**ASSIGNED ADJUSTER**</u>

It is agreed that at the **Insured's** option, the **Company** will use Tim Lehman, Executive General Adjuster, Cunningham Lindsey for the adjustment of all claims made against this **Policy**. This assignment may be changed by mutual consent of the **Insured** and the **Company**.

Domestic

# POLICY PROVISIONS

1. ## PERILS INSURED AGAINST

This **Policy** insures against all risk of direct physical loss, damage or destruction to property described herein occurring during the term of insurance, except as hereinafter excluded.

Wherever used in this **Policy**, the term "peril(s) insured against" refers to the conditions stated above and as modified under Perils Excluded, Clause 4. Of Policy Provisions.

2. ## COVERAGE

Except as hereinafter excluded, this **Policy** insures:

A. ## Real and Personal Property

(1)   The interest of the **Insured** in all real and personal property including but not limited to property owned, used, leased or intended for use by the **Insured**, or hereafter constructed, erected, installed, or acquired, including while in the course of construction, erection, installation, and assembly. In the event of direct physical loss, damage or destruction, the **Company** agrees to accept and consider the **Insured** as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2)   The interest of the **Insured** in real and personal property of others in the **Insured's** care, custody, or control.

(3)   Personal property of others for which the **Insured** is responsible or has agreed to insure prior to direct physical loss, damage or destruction.

(4)   At the option of the **Insured**, personal property of the **Insured's** officials, employees and representatives while on the premises of the **Insured**. This insurance shall then act as primary insurance.

(5)   Contractors' and vendors' interest in property insured to the extent of the **Insured's** liability imposed by law or assumed by contract entered into prior to direct physical loss, damage or destruction provided that such liability shall not exceed the indemnity otherwise provided by this **Policy.**

Wherever used in this **Policy**, the term "property insured" refers to the conditions stated above and as modified under Property Excluded, Clause 5. of the Policy Provisions.

Domestic

**B.    Business Interruption**

(1)    Loss resulting from necessary interruption of business conducted by the **Insured**, whether total or partial, and caused by direct physical loss, damage, or destruction insured herein during the term of this **Policy** to real and personal property as described in Clause 2.A. of the Policy Provisions.

(2)    If such loss occurs during the term of this **Policy**, it shall be adjusted on the basis of Actual Loss Sustained by the **Insured**, consisting of the Net Profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business, including **Ordinary Payroll**, and only to the extent such charges and expenses would have been incurred had no loss occurred.

(3)    In the event of direct physical loss, damage or destruction insured herein to property as described in Clause 2.A. which results in an interruption of research and development activities which in themselves would not have produced income during the Period of Recovery, this **Policy** shall insure the Actual Loss Sustained of the continuing charges and expenses, including **Ordinary Payroll**, directly attributable to such research and development activities.

(4)    However, the **Company** shall not be liable under this Clause B. for any loss resulting from direct physical loss, damage or destruction to **Finished Stock** or for the time required to reproduce said **Finished Stock**.

(5)    Resumption of Operation:  If the **Insured**, by reasonable means within its control, can reduce the loss resulting from the interruption of business:

(a)    by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b)    by making use of available stock, **Merchandise**, or other property;

such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6)    Experience of the Business:

In determining the amount of Net Profit, charges and expenses insured hereunder for the purpose of ascertaining the Actual Loss Sustained, due consideration shall be given to the experience of the business before the date of direct physical loss, damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 2.A.

Domestic

**C.    Extra Expense**

(1)    Extra Expense incurred resulting from direct physical loss, damage or destruction insured herein during the term of this **Policy** to real or personal property as described in Clause 2.A.

(2)    Extra Expense means the excess of the total cost chargeable to the operation of the **Insured's** business over and above the total cost that would normally have been incurred to conduct the business had no direct physical loss, damage or destruction occurred.

**D.    Rental Value**

(1)    Rental Value loss sustained by the Insured resulting from direct physical loss, damage or destruction insured herein during the term of this **Policy** to real and personal property as described in Clause 2.A. but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

(2)    Rental Value is defined as the sum of:

(a)    the total anticipated gross rental income from tenant occupancy of the insured property as furnished and equipped by the **Insured;** and

(b)    the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the **Insured;** and

(c)    the fair Rental Value of any portion of said property which is occupied by the **Insured.**

(3)    Experience of the Business:

In determining the amount of Rental Value insured hereunder for the purposes of ascertaining the Actual Loss Sustained, due consideration shall be given to the rental experience before the date of direct physical loss, damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 2.A.

(4)    When the **Insured** is the lessee, this **Policy** insures the Actual Loss Sustained of the rent which the **Insured** is obligated to pay including ground rents, accrued charges, real estate taxes and interest if the **Insured** is liable for such, less charges and expenses that do not necessarily continue during the Period of Recovery.

**E.    Royalties**

(1)    Loss of income to the **Insured** under royalty, licensing fees, or commission agreements between the **Insured** and another party which is not realizable due to direct physical loss, damage or destruction insured herein during the term of this **Policy** to property of the other party of the type insured under this **Policy.**

Domestic

(2)    If such loss occurs during the term of this **Policy**, it shall be adjusted on the basis of Actual Loss Sustained of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3)    Resumption of Operations:
The **Insured** shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the **Insured** shall cooperate with that party in every reasonable way to affect this, but not financially, unless such expenditures are authorized by the **Company**.

(4)    Experience of the Business:
In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the Actual Loss Sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of direct physical loss, damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this **Policy** of such other party.

F.    <u>Delay in Completion of the Project</u>

(1)    **Time Element** loss sustained by the **Insured** to the extent not insured elsewhere under the **Policy** and caused by direct physical loss, damage or destruction insured herein occurring during the term of this **Policy** to property while in the course of construction, erection, installation or assembly as described under Clause 2.A. which results in a Delay in Completion of the Project.

(2)    Delay in Completion of the Project means the period of time between the Anticipated Date of Completion per the construction agreement and the date on which property while in the course of construction, erection, installation, and assembly is actually completed and accepted with the exercise of due diligence and dispatch. If such loss occurs during this period of time, it shall be adjusted on the basis of the Actual Loss Sustained by the **Insured** and consisting of the **Time Element** loss provided for under this Policy. The Anticipated Date of Completion shall be modified to the extent there are delays not caused by insured physical, loss, damage or destruction.

In determining the amount of business interruption and/or rental value loss payable hereunder during the period of time described above, such loss shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations.

(3) Anticipated Date of Completion means the date at the time of the direct physical loss, damage or destruction on which property while in the course of construction, erection, installation, and assembly was scheduled to have been completed and accepted per the construction agreement had no insured physical, loss, damage or destruction occurred.

Domestic

**G.**    <u>Time Element Extensions</u>

(1)   This **Policy** insures against **Time Element** losses resulting from:

     (a)   Service Interruption
Direct physical loss, damage or destruction as insured herein to electrical, steam, gas, water, sewer, telephone, or any other utility or service, transmission lines and related plants, substations and equipment of suppliers of such services, not being an **Insured** under this policy, situated on or outside the premises.

The provisions of this paragraph shall also extend to include the extensions of coverage described under subparagraphs (1) (b), Contingent Business Interruption and Contingent Extra Expense, and (1) (d), Leader Property below.

     (b)   Contingent Business Interruption and Contingent Extra Expense
Direct physical loss, damage or destruction as insured herein to property of the type insured that wholly or partially prevents any direct or indirect supplier of any tier of goods and/or services to the **Insured** from rendering their goods and/or services, other than the services described in subparagraph (a) above, or property of the type insured that wholly or partially prevents any direct or indirect receiver of any tier of goods and/or services from the **Insured** from accepting the **Insured's** goods and/or services, such supplier or receiver to be located anywhere in the world where permitted by law.

     (c)   Impounded Water
Direct physical loss, damage or destruction as insured herein to dams, reservoirs, or equipment connected thereto when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources.

     (d)   Leader Property
Direct physical loss, damage or destruction as insured herein to property not owned or operated by the **Insured**, located in the same vicinity as the **Insured**, which attracts business to the **Insured**.

(2)   This **Policy** insures against **Time Element** losses resulting from:

     (a)   Interruption by Civil or Military Authority:
An interruption of business, whether total or partial, during the period of time when, in connection with or following a peril insured against, access to real or personal property is impaired by order or action of civil or military authority.

The provisions of this paragraph shall extend to include the Time Element extensions of coverage described under subparagraphs (1) (a), Service Interruption; (1) (b), Contingent Business Interruption and Contingent Extra

Domestic

Expense; and (1) (d), Leader PropertyThe **Time Element** loss shall be based upon the Period of Recovery described under paragraph 2.H.(1) of the Policy Provisions.

    (b)   Ingress/Egress:
An interruption of business, whether total or partial, during the period of time when, in connection with or following a peril insured against, ingress to or egress from real or personal property is impaired.

The provisions of this paragraph shall extend to include the Time Element extensions of coverage described under subparagraphs (1) (a), Service Interruption; (1) (b), Contingent Business Interruption and Contingent Extra Expense; and (1) (d), Leader Property

The **Time Element** loss shall be based upon the Period of Recovery described under paragraph 2.H.(1) of the Policy Provisions

   (3)   Damages and Penalties:
This **Policy** insures damages and penalties as may be imposed on the **Insured** for breach of contract either in respect of goods or services not delivered or in respect of the **Insured's** failure to take delivery of goods or services ordered, all as a result of direct physical loss, damage, or destruction not otherwise excluded herein to real or personal property described under this **Policy**.

   (4)   Time to Replace Finished Stock or Stock in Process:
Notwithstanding paragraph 2.B.(4) of the Policy Provisions, this **Policy** insures the Extra Expense incurred by the **Insured** during the time required to replace damaged or destroyed **Finished Stock** or **Stock in Process** to the inventory level which existed prior to the loss .

   (5)   Downzoning:
In the event of direct physical loss, damage or destruction insured under this **Policy** that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this **Policy** insures the additional Business Interruption and/or Rental Value loss resulting from the inability to rebuild existing property to like kind and quality, height, area, and/or occupancy. Such loss shall be measured for the length of time as would have been required with the exercise of due diligence and dispatch to rebuild or replace such existing property and where such loss is not otherwise recoverable elsewhere under the **Policy**.

H.    <u>**Provisions Applicable to Business Interruption, Extra Expense, Rental Value, Royalties Coverages, Delay in Completion of the Project and Time Element Extension**</u>

   (1)   Period of Recovery (not applicable to Delay in Completion of the Project): The length of time for which loss may be claimed:

Domestic

(a)     shall commence with the date of such direct physical loss, damage or destruction and shall not be limited by the date of expiration or cancellation of this **Policy**;

(b)     shall not exceed the length of time required to rebuild, repair or replace the property that has been lost, damaged or destroyed with the exercise of due diligence and dispatch; and

(c)     shall include an Extended Period of Indemnity, not to exceed the time period indicated within the Limits of Liability, which is the additional length of time to restore the **Insured's** business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(i)     the date on which the liability of the **Company** for loss or damage would otherwise terminate; or

(ii)    the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

The Extended Period of Indemnity shall include the Time Element extensions described in paragraphs 2.G.(1) through 2.G.(3). However, the **Time Element** loss shall not exceed the limit applicable to each such extension nor shall the Period of Recovery including this Extended Period of Indemnity exceed the time period limitations indicated in subparagraphs F.(4)(c) and (d) under the Limits of Liability clause in the Declarations.

(2)  Special Exclusions:
This Section of the **Policy** does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, or contract except as provided under paragraph 2.G.(4), Damages and Penalties of the Policy Provisions, or order, nor for any increase of loss due to interference at the **Insured's** premises by strikers or other persons with rebuilding, repairing, or replacing the property lost, damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

(3)  Expense to Reduce Loss:
This **Policy** insures such expenses incurred for the purpose of reducing any loss under this **Policy**, but such expenses may not exceed the amount by which the loss under this **Policy** is thereby reduced.

(4)  Interdependency: This **Policy** is extended to cover the **Time Element** loss sustained by the **Insured** anywhere in the world where permitted by law caused by direct physical loss, damage, or destruction not otherwise excluded herein to real and personal property of the **Insured** as described in Policy Provisions, Clause 2.A. and situated within the Policy's Territory.

Domestic

I. __Transit__

(1) Property in transit within and between the territorial limits of this **Policy**, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2) This transit coverage insures direct physical loss, damage or destruction to property:

   (a) sold and shipped by the **Insured** under terms of Free on Board (F.O.B.) point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

   (b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

   (c) occasioned by the acceptance by the **Insured**, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

   (d) at the **Insured's** option, which is incoming to the **Insured.**

(3) (a) The **Insured** may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

   (b) With respect to shipments made under subparagraphs (2)(a) and (2)(d) above, the **Company** agrees to waive its rights of subrogation against consignees at the option of the **Insured.**

(4) The **Insured** is not to be prejudiced by any agreements exempting lightermen from liability.

(5) Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between the **Company** and the **Insured.**

(6) Resulting **Time Element** loss as insured against under this **Policy** caused by insured direct physical loss, damage or destruction to property in transit as described above shall also be insured.

(7) Coverage as described under this paragraph also includes general average and salvage charges on property in transit as covered hereunder.

Domestic

**J.**   <u>**Accounts Receivable**</u>

(1)   All sums due the **Insured** from customers, provided the **Insured** is unable to effect collection thereof as the result of direct physical loss, damage or destruction as insured herein to records of accounts receivable;

(2)   Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such direct physical loss, damage or destruction;

(3)   Collection expense in excess of normal collection cost and made necessary by such direct physical loss, damage or destruction;

(4)   Other reasonable and necessary expenses incurred by the **Insured** in reestablishing records of accounts receivable following such direct physical loss, damage or destruction.

For the purpose of this insurance, credit card company charge **Media** shall be deemed to represent sums due the **Insured** from customers, until such charge **Media** is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the **Insured** cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)   The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)   The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

(3)   There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the **Insured**, and an amount to allow for probable bad debts which would normally have been uncollectible by the **Insured**.

This **Policy** does not insure against shortage resulting from bookkeeping errors or omissions; or alteration, falsification or manipulation of records of accounts receivable committed to conceal wrongful giving, taking, obtaining or withholding of money, **Securities** or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

Domestic

**K.    Leasehold Interest**

(1)    Pro rata proportion from the date of loss to expiration date of the lease, to be paid without discount, on the **Insured's** interest in:

    (a)    the amount of bonus paid by the **Insured** for the acquisition of the lease not recoverable under the terms of the lease;

    (b)    improvements and betterments to real property which are not insured under any other clause of this **Policy**;

    (c)    the amount of advance rental paid by the **Insured** and not recoverable under the terms of the lease;

when property of the type insured is rendered wholly or partially untenantable by any insured loss during the term of this **Policy** and the lease is cancelled by the party not the Insured under this **Policy** in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the lost, damaged or destroyed property is located; and

(2)    (a)    The Interest of the **Insured** as Lessee or Lessor when property is rendered wholly or partially untenantable by any insured loss during the term of this **Policy** and the lease is cancelled by the party not the **Insured** under this **Policy** in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the lost, damaged or destroyed property is located.

    (b)    "The Interest of the **Insured** as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

    (c)    Notwithstanding the conditions stipulated under subparagraph (2)(a) and (2)(b) above, in the event

        (i)    property is rendered wholly untenantable by any insured loss during the term of this **Policy**; and,

        (ii)    the lease cannot be cancelled due to conditions contained therein; or the lessor is unable to cancel the lease without the consent from a third party; or the lessor's failure to cancel the lease is unreasonable under the circumstances; and,

        (iii)    the **Insured** is unable to reoccupy or conduct business of the type which existed prior to the direct physical loss, damage or destruction within said untenantable property within a period of time to rebuild as prescribed by the lease following such direct physical loss, damage or destruction,

Domestic

then the **Insured**, nevertheless, shall have the benefit of this paragraph (2) as if said lease had been cancelled.

   (3)   Definitions:

The following terms, wherever used, shall mean:

      (a)   The Interest of the **Insured** as Lessee is defined as:

         (i)   the excess of the Rental Value of similar premises over the actual rent payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and/or

         (ii)   the rental income earned by the **Insured** from sublease agreements, to the extent not insured under any other clause of this **Policy,** over and above the rental expenses specified in the lease between the **Insured** and the lessor.

      (b)   The Interest of the **Insured** as Lessor is defined as the difference between the rent payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not insured under any other clause of this **Policy**.

      (c)   Net Lease Interest is defined as that sum, which placed at 3% interest compounded annually will be equivalent to "The Interest of the **Insured** as Lessee or Lessor".

   (4)   In the event of direct physical loss, damage or destruction to property of the type insured which is leased by the **Insured,** this **Policy** insures, to the extent not otherwise insured under any other clause of this **Policy,** the actual rent payable for the unexpired term of the lease if the lease agreement requires continuation of rent and if such property is wholly untenantable or unusable; or if such property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

   (5)   The **Insured** shall use due diligence including all things reasonably practicable to diminish loss under this clause. The **Company** shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the **Insured** exercising any option to cancel the lease.

**3.    COVERAGE EXTENSIONS**

**A.   Brands or Trademarks**

In case of direct physical loss, damage or destruction as insured herein to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or the **Insured**, the salvage value of such damaged property shall be determined after removal at the **Company**'s expense in the customary manner of all such brands or trademarks or other identifying characteristics.

Domestic

**B.    Consequential Loss**

This **Policy** insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration directly resulting from direct physical loss, damage or destruction not otherwise excluded.

**C.    Consequential Reduction in Value**

This **Policy** insures the reduction in value to the remaining part or parts of any lot of goods usually sold by lots or sizes, color ranges, or other classifications due to direct physical loss, damage or destruction of a part of such lots or other classifications.

**D.    Control of Damaged Goods**

The **Insured**, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this **Policy** are lost, damaged or destroyed, or are fit for normal intended use, sale or consumption. No goods so deemed by the **Insured** to be lost, damaged or destroyed or unfit for use, sale or consumption shall be sold or otherwise disposed of except by the **Insured** or with the **Insured's** consent, but the **Insured** shall allow the **Company** any salvage obtained by the **Insured** on any sale or other disposition of such goods. The **Insured** shall have full right to the possession of and retain control of all goods involved in any loss under this **Policy**. It is further agreed that an order of a governmental authority to destroy damaged goods shall convey to the **Insured** its right to full possession and control thereof.

**E.    Debris Removal and Cost of Clean-up**

(1)    In the event of direct physical loss, damage or destruction to property, this **Policy** insures:

(a)    expense reasonably incurred in removal of debris of the property insured hereunder lost, damaged or destroyed from the location of the loss; and/or

(b)    cost of clean-up including the cost of removal of debris of property not insured hereunder lost, damaged or destroyed from the location of the loss.

This clause does not insure against the costs of decontamination or removal of water, soil or any other substance not insured by this **Policy** on or under such premises.

(2)    The **Insured** shall give notice to the **Company** of intent to claim for cost of removal of debris or cost of clean-up no later than 12 months after the date of such direct physical loss, damage, or destruction.

**F.    Decontamination Costs of Insured Property**

If insured property is contaminated as a result of direct physical loss, damage or destruction insured by this **Policy** and there is in force at the time of loss any law or ordinance regulating

Domestic

contamination, including but not limited to the presence of pollution or hazardous material(s), then this **Policy** insures, as a direct result of enforcement of or compliance with such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This additional coverage applies only to that part of the insured property so contaminated as a result of direct physical loss, damage or destruction not otherwise excluded under this **Policy**.

With respect to **Time Element** loss insured herein, this **Policy** insures the additional period of time necessary for the decontamination and/or removal of contaminated insured property in a manner to satisfy any law or ordinance regulating contamination, including but not limited to the presence of pollution or hazardous material. As used hereunder, the "additional period of time" means the additional time with the exercise of due diligence and dispatch to decontaminate and remove said insured property as described under this clause beyond the time period which the **Company** would have been liable for had no such contamination loss occurred.

The **Company** is not liable under this extension for the costs required for removing contaminated uninsured property nor the contaminant therein or thereon, whether or not the contamination results from an insured cause of loss.

G. <u>Defense Costs</u>

This **Policy**, subject to all of its provisions, insures the costs and fees to defend any claim or suit against the **Insured** and/or its directors, officers and/or employees alleging direct physical loss, damage or destruction as insured against to property of others to the extent of the **Insured's** liability therefore, even if such claim or suit is groundless, false or fraudulent; but the **Company** may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient. Coverage hereunder shall apply solely in respect of costs and fees incurred in connection with the defense of any suit(s) or part of any suit(s) for which claim is made for the value of property and shall in no circumstances extend to insure costs and fees incurred in connection with additional liabilities.

H. <u>Demolition and Increased Cost of Construction</u>

In the event of direct physical loss, damage or destruction insured under this **Policy** that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this **Policy** insures:

(1) the cost of demolishing the undamaged property including the cost of clearing the site;

(2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.

Domestic

However, the **Company** shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

(4)   any increase in the **Time Element** loss arising out of the additional time required to comply with said law or ordinance.

If the coverage under this clause is subject to a sublimit, such sublimit shall only apply with respect to paragraphs (1), (3) and (4) above. Such sublimit shall not apply with respect to paragraph (2) above where the coverage described therein shall be included within the **Policy** limit.

For purposes of coverage provided under this clause, there shall be no duplication of coverage with the coverage provided under Clause F, Decontamination Costs of **Insured** Property.

I.   **Expediting Expense**

This **Policy** insures the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

J.   **Fire Department Charges and Extinguishing Expenses**

This **Policy** insures the following expenses resulting from an insured loss:

(1)   fire department charges and any extinguishing expenses which the **Insured** incurs;

(2)   loss and disposal of fire extinguishing materials expended;

(3)   charges due under mutual aid agreements.

**However, there will be no coverage for any costs incurred as a result of a false alarm.**

K.   **Land and Water Contaminant or Pollutant Clean-up, Removal and Disposal**

This **Policy** insures the reasonable and necessary costs for the clean-up, removal, and disposal of Contaminants or **Pollutants** from land and water at an insured location if the release, discharge or dispersal of Contaminants or **Pollutants** is a result of direct physical loss, damage or destruction to property not otherwise excluded under this **Policy**.

Such costs described above shall include:

(1)   cost of examination by outside experts with expertise in the field of pollution and contamination.

(2)   cost to detect the cause which led to said release, discharge or dispersal provided such cause of loss is otherwise insured against; however, the **Company**'s liability to repair or correct such cause shall be subject to the other **Policy** terms and conditions not otherwise stipulated in this coverage extension.

Domestic

(3)   cost to clean-up, remove and dispose said uninsured property in a manner to satisfy any law or ordinance in force at the time of loss regulating contamination, including but not limited to the presence of pollution or hazardous material(s). This additional cost only applies to that part of the uninsured property at an insured location so contaminated or polluted as a result of insured direct physical loss, damage or destruction. Such cost shall also include the cost to test, monitor or assess for the presence of **Pollutants** or Contaminants within said uninsured property following clean-up, removal and disposal thereinafter if required by law or ordinance for a period of 12 months starting with the date of direct physical loss, damage or destruction to insured property.

With respect to **Time Element** loss insured herein, this **Policy** insures the additional period of time necessary for the clean-up, removal and disposal of contaminated or polluted uninsured property. As used hereunder, the "additional period of time" means the additional time necessary with the exercise of due diligence and dispatch to clean-up, remove or dispose said uninsured property as described under this clause beyond the time period which the **Company** would have been liable for had no such contamination or pollution loss occurred.

**L.**    **Loss Adjustment Expenses**

This **Policy** insures the expenses incurred by the **Insured**, their employees, and the **Insured's** representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this **Policy**. However, the **Company** shall not be liable under this clause for expenses incurred by the **Insured** in utilizing the services of a public adjuster or insurance broker claim representatives except this exception shall not apply to broker's dedicated forensic accounting units, or claims management, construction or engineering personnel.

**M.**    **Sequential Loss**

In the event of direct physical loss, damage or destruction not otherwise excluded to property of the type insured, and such loss, damage or destruction without the intervention of any other independent excluded cause, results in a sequence of events which causes direct physical loss, damage or destruction to insured property, then this **Policy** insures the resulting loss.

**N.**    **Tax Treatment of Profits**

In the event of a loss insured hereunder, this **Policy** insures the additional loss sustained by the **Insured** in the event the tax treatment of:

(1)   the profit portion of a loss recovery involving **Stock in Process**, **Finished Stock** or **Merchandise**; and/or

(2)   the profit portion of Business Interruption loss proceeds

differs from the tax treatment of profits that would have been incurred had no loss occurred.

Domestic

4.    **PERILS EXCLUDED**

This **Policy** does not insure:

A.    against any fraudulent or dishonest act or acts committed by the **Insured** or any of the **Insured's** employees (including Temporary Employees) with the manifest intent to:

   (1)    cause the **Insured** to sustain such loss, and

   (2)    obtain financial benefit for the **Insured**, **Insured's** employee, or for any other person or organization intended by the **Insured** or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the regularly or customarily course of employment.

   This exclusion shall not apply to unintentional, negligent or reckless acts by the **Insured's** employees and Temporary Employees resulting in direct physical loss, damage or destruction, or to willful acts of destruction by an employee(s) or Temporary Employee(s) without the knowledge of the **Insured**. This exclusion shall not apply to theft by Temporary Employee(s).

   Temporary Employee means any individual assigned to perform employee duties for the **Insured** on a limited, contingent, fixed-term, or part time basis, including individuals associated with any agency or service for the placement of temporary personnel. This **Policy** does not insure any loss caused by a Temporary Employee(s) if such loss is also insured by any insurance or surety held by an agency or service for the placement of temporary personnel.

B.    against the cost of correcting defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to direct physical loss, damage or destruction resulting from such defective design or specifications, faulty material, or faulty workmanship. This exclusion shall not apply to property in transit;

C.    against errors in processing, servicing or manufacture of the Insured's product unless direct physical loss, damage or destruction not otherwise excluded ensues and then this **Policy** shall insure for such ensuing physical loss, damage or destruction. This exclusion shall not apply to property while in transit, or while in the course of construction, erection, installation, and assembly;

D.    against ordinary wear and tear, inherent vice, latent defect or gradual deterioration, evaporation, rust, shrinkage or change in color, flavor, texture or finish  unless direct physical loss, damage or destruction not otherwise excluded ensues and then this **Policy** shall insure for such ensuing direct physical loss, damage or destruction;

E.    against normal settling or normal shrinkage of walls, floors, foundations, or ceilings unless direct physical loss, damage or destruction not otherwise excluded ensues and then this **Policy** shall insure for such ensuing physical loss or damage or destruction. This exclusion shall not apply to property in transit;

Domestic

F.  against direct physical loss, damage or destruction including costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever. Nevertheless, if a peril not excluded from this **Policy** arises directly from seepage and/or pollution and/or contamination any direct physical loss, damage or destruction insured under this **Policy** arising directly from that peril shall be insured.

However, if the insured property is the subject of direct physical loss, damage or destruction for which the **Company** has paid or agreed to pay, this **Policy** insures against direct physical loss, damage or destruction to the property insured hereunder caused by resulting seepage and/or pollution and/or contamination. Nothing in this exception shall override any radioactive contamination exclusion clause in the **Policy**.

In addition, this **Policy** does not insure against fines, penalties and expenses directly attributable to such fines and penalties incurred or sustained by or imposed on the **Insured** at the order of any government agency, court or other authority arising from any seepage and/or pollution and/or contamination.

Notwithstanding the above, this **Policy** does insure against direct physical loss, damage or destruction including costs or expenses in connection with any kind or description of seepage and/or contamination, direct or indirect, to property in transit arising from or within the vehicle or other mode of transportation.

No part of this exclusion shall limit Coverage Extension 3.F., Decontamination Costs of **Insured** Property and Coverage Extension 3.K, Land and Water Contaminant or Pollutant Clean-up, Removal and Disposal.

G.  against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; except:

(1)  if fire or **Sprinkler Leakage** ensues, liability is specifically assumed for direct physical loss, damage or destruction by such ensuing fire or **Sprinkler Leakage** but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

(2)  the **Company** shall be liable for direct physical loss, damage or destruction caused by sudden and accidental radioactive contamination including resultant radiation damage for each **Occurrence** from material used or stored or from processes conducted at the insured location provided at the time of direct physical loss, damage or destruction there is neither a nuclear reactor capable of sustaining a nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel at the insured location;

H.  (1)  against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

(a)  by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

Domestic

    (b)    or by military, naval, or air forces;

    (c)    or by an agent of any such government, power, authority, or forces;

  (2)    against any weapon employing atomic fission or fusion;

  (3)    against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such **Occurrence**;

  (4)    against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize direct physical loss, damage or destruction not otherwise excluded under this **Policy**;

  (5)    against risks of contraband or illegal trade.

I.    against loss due to animals, moths, vermin, termites and insects unless direct physical loss, damage or destruction not otherwise excluded ensues and then this Policy shall insure for all such ensuing physical loss, damage or destruction.

J.    against smog or changes in temperature or changes in relative humidity unless direct physical loss, damage or destruction not otherwise excluded ensues and then this Policy shall insure for all such ensuing physical loss, damage or destruction.

K.    against delay, loss of market, or loss of use.

L.    against mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

M.    against **Fungus, Mold**, wet or dry rot and any cost due to the presence of such including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. However, notwithstanding any seepage, and/or pollution, and/or contamination exclusion, this **Policy** insures direct physical loss, damage or destruction to insured property resulting from **Fungus, Mold**, wet or dry rot which is a direct result of physical loss, damage or destruction insured against under this **Policy**. Such loss shall include the cost of testing performed after removal and remediation of such **Fungus, Mold**, wet or dry rot from insured property provided there is reason to believe that such **Fungus, Mold**, wet or dry rot is still present.

N.    against:
    (1)    any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility;

    (2)    any corruption, destruction, distortion, erasure or other loss, damage or destruction to Data, software, or any similar kind of programming or instruction set.  Should Media containing Data insured by this Policy suffer direct physical loss, damage or destruction as insured herein, then this exclusion shall not apply and the basis for valuation shall be as stated in

Domestic

Policy Provisions, sub paragraph 6.B(4)., providing such Media containing the Data is repaired, replaced or restored;

(3)    loss of use or functionality, whether partial or entire, of Data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing direct physical loss, damage or destruction, not otherwise excluded, and this Policy shall insure for all such ensuing direct physical loss, damage or destruction.

O.  against error or omission in electronic Data and Media including loss attributable to program design constraints, networking compatibility and original business applications. This exclusion shall not apply to ensuing direct physical loss, damage or destruction, not otherwise excluded, and then this Policy shall insure for all such ensuing direct physical loss, damage or destruction.

5.   **PROPERTY EXCLUDED**

This **Policy** does not insure loss or damage to:

A.  Land and land values; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing **Land Improvements**.

However, this exclusion shall not apply to the cost of restoring the land, including the costs of re-compaction of the land, in order to facilitate repair or replacement of insured property situated underground that has sustained direct damage or destruction as insured under this **Policy.**

B.  Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C.  Money, **Securities**, and furs; precious metals, precious stones, and semi-precious stones. However, this exclusion shall not apply to precious metals, precious stones, and semi-precious stones used by the **Insured** for industrial or manufacturing purposes.

D.  Growing crops, standing timber, and animals except animals for research;

E.  Motor vehicles licensed for highway use when not at the **Insured's** location(s), but this exclusion shall not apply to contractor's equipment; watercraft; aircraft and satellites;

F.  Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

Domestic

G. Export shipments after loading on board an overseas vessel, watercraft, or aircraft, or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from an overseas vessel, watercraft, or aircraft, or until ocean marine insurance terminates, whichever occurs last;

H. Underground mines;

I. Overhead transmission and distribution lines situated beyond 1,000 feet of insured property but this exclusion shall not affect the Service Interruption and Consequential Loss coverage provided under this Policy.

J. Asbestos, including the removal of asbestos from any insured real and personal property, unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, sprinkler leakage as defined by the Insurance Services Office (ISO) in the state of the Mailing Address of the **Insured.**

In addition, this **Policy** shall exclude the demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law, ordinance, or regulation regulating asbestos removal unless physically damaged per the first paragraph above.

Any increased loss associated with any governmental direction or request declaring that such asbestos present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended and must be removed.

6. <u>**VALUATION**</u>

In case of loss, the basis of adjustment shall be as follows:

A. **Stock**

   (1) **Raw Stock** shall be valued at replacement cost at the time and place of loss.

   (2) **Stock in Process** shall be valued at the cost of raw materials and labor expended plus proper portion of overhead charges.

   (3) **Finished Stock** shall be valued at the **Insured's** selling price at the time of loss, less all discounts, rebates, and unincurred expenses to which such sales price would have been subject.

Domestic

**B.    Real and Personal Property**

(1)    Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments shall be valued at the lesser of the cost to repair or replace new on the same location, as of the date of replacement.

(2)    Electronic data processing or control equipment and production machinery and equipment or any part thereof shall be valued at the lesser of the cost to repair or replace new on the same location as of the date of replacement except, with respect to items for which replacement with identical property is impossible, the **Company** shall be liable for the replacement cost being the cost of items similar to the lost, damaged or destroyed property and intended to perform the same function but which may include technological advances.

(3)    **Valuable Papers and Records** shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information.

(4)    **Media** and **Data** shall be valued at the cost (a) to replace or repair **Media**; and (b) to restore **Data** including the costs to re-create, research and engineer.

(5)    Property of others which the **Insured** is required to insure to a stipulated value shall be valued at the lesser of the cost to repair or replace new on the same location as of the date of replacement, or at the stipulated value, at the **Insured's** option;

(6)    **Fine Arts** shall be valued as follows:

(a)    Owned by the **Insured**:

at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored, at the appraised value prior to the loss. If there is no appraisal, at the lesser of the original acquisition cost or the market value at the time of loss.

(b)    Property of Others:

at the lesser of the cost of reasonably restoring the property to its condition immediately prior to the loss, or the **Insured's** contractual or legal liability.

(7)    Property sold by the **Insured** under a conditional sale, trust agreement or an installment or deferred payment plan shall be valued as follows:

(a)    if a total loss occurs to such property, at the amount due the **Insured** as shown in its accounting records;

(b)    if a partial loss occurs to such property and the **Insured** repossesses the property, at the difference, if any, between the amount due the **Insured** as shown in its accounting records and the realized value of such property.

Domestic

The amount of the **Company's** liability under this valuation shall be reduced by any payments made to the **Insured** by the buyer with regards to such property.

(8)   Other property not otherwise provided for, at the lesser of the cost to repair or replace new on the same location, as of the date of replacement.

(9)   Permission is granted for the **Insured** to replace the damaged property with any property at the same location or at another location within the territorial limits of this **Policy**, but recovery is limited to what it would cost to repair or replace new on the same location as of the date of replacement.  If repair or replacement of property lost, damaged or destroyed does not commence within two years after such loss, damage or destruction, the **Company** shall not be liable for more than the actual cash value at the time of loss, ascertained with proper deduction for depreciation, of the property damaged or destroyed. However, limitations imposed by federal, state, municipal or other governmental laws, ordinances, governmental directives or standards shall not result in an actual cash valuation but in a replacement cost new valuation. Nevertheless, the **Insured** may elect initially to make a claim on an actual cash value basis subject to the terms and conditions of this **Policy**, and subsequently submit a claim for the difference between the actual cash value settlement and replacement cost new as stipulated within this Valuation Clause, provided the **Company** is notified of this intent within two years after the direct physical loss, damage or destruction and provided the property which is lost, damaged or destroyed is repaired or replaced.

(10)  If the **Insured** elects to repair or replace lost, damaged or destroyed property, the costs and expenses of architects, surveyors, engineers and other relevant experts incurred by or on behalf of the **Insured** in effecting such repair or replacement shall be included as part of the loss.

To the extent the **Insured** acts as its own general contractor and/or provides engineering, design or construction services for repair or replacement of the lost, damaged or destroyed property, the costs incurred by or on behalf of the **Insured** shall include:

(a)   overhead charges as defined by the **Insured's** regular accounting practice in place at the time of loss; and

(b)   payroll charges, appropriate fringe benefit costs and expenses of those employees expending time on the project, the cost of which is not included in paragraph (a); and

(c)   the share of home office costs including payroll and expenses of the divisions to which such employees are assigned; and

(d)   the share of corporate general and administrative costs allocated to the divisions involved as prescribed in the **Insured's** regular accounting practice in place at the time of the loss for determining its costs for providing engineering, procurement and construction management services.

Domestic

7. **ACCIDENT**

The term **Accident** is defined solely for the determination of the **Program** limits of liability and/or deductible(s) and application of the Sue and Labor Clause 27 and Suspension Clause 18 of the Policy Provisions. The term "**Accident**" shall not limit or define the perils or coverages provided elsewhere in this **Policy**.

8. **NEWLY ACQUIRED LOCATIONS**

This Policy insures direct physical loss, damage or destruction to property of the type insured when such property is purchased, constructed, leased or rented, acquired, or is merged with, becomes an affiliate or subsidiary of, or comes under the control of the **Insured**, or in which the **Insured** acquires an insurable interest, after the inception date of this **Policy**.

This coverage for Newly Acquired Locations automatically applies from the date the **Insured** first acquires an insurable interest in such property and continues until the property is reported to the **Company** or the time limit shown in the Limits of Liability Clause in the Declarations section has been reached. The time limit begins on the date of purchase, lease, or rental or other acquisition. If the property is not reported to the **Company** within the designated time frame, coverage for this property shall fall under the **Miscellaneous Unnamed Locations** coverage thereafter.

The conditions stated under this clause shall not apply as respects property while in the course of construction, erection, installation, and assembly. In such instances, the policy's limit, or sublimit(s) with respects to this type of property shall apply.

9. **CONTRIBUTING INSURANCE**

Contributing Insurance is insurance written under the same **Program.** This insurance shall contribute in accordance with the conditions of this **Policy.** The existence of such Contributing Insurance shall not prejudice the coverage provided under this **Policy** nor will it reduce any liability hereunder.

10. **EXCESS INSURANCE**

Excess Insurance is insurance over the limit of liability set forth in this **Policy**. The existence of such Excess Insurance shall not prejudice the coverage provided under this **Policy** nor will it reduce any liability hereunder.

11. **UNDERLYING INSURANCE**

A. Underlying Insurance is insurance on all or any part of the deductible and against all or any of the causes of loss insured by this **Policy** including declarations of value to the carrier for hire. The existence of such Underlying Insurance shall not prejudice or affect any recovery otherwise payable under this **Policy**.

Domestic

B. If the limits of such Underlying Insurance exceed the deductible amount which would apply in the event of loss under this **Policy**, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance Clause.

## 12. OTHER INSURANCE

Except for insurance described by the Contributing Insurance Clause, the Excess Insurance Clause, or the Underlying Insurance Clause, this **Policy** shall not insure to the extent of any other collectible insurance, whether directly or indirectly insuring the same property against the same causes of loss. The **Company** shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance. Notwithstanding that this **Policy** only insures for the excess of any other collectible insurance, the **Company** guarantees prompt payment in full of the amount of loss which would have been recoverable under this **Policy** in the absence of such other collectible insurance.

Should there be any recovery from the other insurance, subsequent to the loss payment made by this **Company**, then such recovery shall inure to the benefit of this **Company**, not to exceed the loss payment.

As used herein, "other collectible insurance" does not include self-insurance, deductibles, or self-insured retentions.

## 13. PRIORITY OF PAYMENTS

If the insurance under this **Program** consists of a primary layer and excess layer(s) of insurance, in the event of a loss

A. where the amount of such loss exceeds a layer in which the **Company** participates within the **Program** Limit of Liability; and

B. where a portion of such loss involves coverages and/or perils and/or locations insured under the Company's Policy(ies) as stated in the Participation Clause but not insured under policies excess of the Company's participation;

then this **Policy** shall, relative to its Program Limit of Liability, pay first the portion of such loss not insured by any excess **Policy**.

## 14. EXCESS PARTICIPATION CLAUSE

If the **Company** is participating on an excess basis, Clauses G. Deductibles and H. Waiting Period(s) of the Declarations shall be considered "for information purposes only" except as further described under subparagraph E. (2) below, and the following conditions shall apply:

A. Attachment

There will be no coverage hereunder until the amount of direct physical loss, damage or destruction arising out of any one **Occurrence** exceeds the underlying layer above which the **Company**'s participation attaches, as shown in the Participation Clause E. of the Declarations,

Domestic

plus the applicable portion of the **Policy** deductible and subject to any Waiting Period attributable to the perils and/or property and/or coverages insured hereunder.

B.  Application of Sublimits

In the event of direct physical loss, damage or destruction involving:

(1)  liability under both the primary/underlying excess layer as well as the layer in which this **Policy** participates; and

(2)  any or all of the coverages where a sublimit applies within said primary/underlying excess layer

it is agreed that the maximum liability for such sublimited coverages shall be as shown in Clause F. Program Limits of Liability, paragraphs (2), (3) and (4) of the Declarations.

C.  Step Down Provision

(1)  In determining the amount of any direct physical loss, damage, or destruction for which this **Policy** is excess, the total loss for all coverages caused by any combination of perils, one or more of which is insured against under the primary/underlying excess **Policy(ies)**, shall be used even though all such perils or coverages are not insured against under this excess Policy.

(2)  Any recoveries made under the primary/underlying excess **Policy(ies)** shall be considered as first applying to those perils and/or property and/or coverages not insured against by this **Policy**. Upon exhaustion of the primary/underlying excess **Policy** limits, this **Policy** shall be liable for the loss in excess of the amount attributable to the primary/underlying excess **Policy(ies)** with respect to those perils and/or coverages and/or property insured hereunder, subject to the limit(s) of this **Policy**.

D.  **Insured** as Contributing or Self-Insurer

In the event the **Insured** is a contributing or self-insurer with respect to the perils and/or property and/or coverages otherwise insured in any primary/underlying Excess Insurance and no **Policy** is issued to define the extent of this contributing or self-insurance, for the purposes of this Excess Participation Clause, the **Insured's** contributing or self-insurance shall be deemed to be the same as either:

(1)  all other Contributing Insurance participating in the **Insured's** layer(s); or

(2)  all other Contributing Insurance participating in the layer below the **Insured's** layer where the **Insured** is entirely self-insuring the layer.

If the coverage provided by the **Policy(s)** of the other Contributing Insurance company(s) is

Domestic

non-concurrent, then the contributing or self-insurance provided by the **Insured** within that layer shall be deemed to be the same as the coverage provided by that Contributing Insurance company whose Policy provides the least indemnity for the loss.

E.    Drop Down Over Exhausted Aggregated Limits

    (1)    In the event the annual aggregate limits provided for **Flood** and/or **Earthquake** and/or any other perils or coverages in any primary/underlying excess insurance are diminished or exhausted in any one **Policy** year, the coverage provided under this **Policy** shall respond as excess of such remaining limits provided such coverage is insured hereunder.

    (2)    In such event, the applicable amount of the deductible provision of the primary **Policy** shall apply to the combination of all **Policies**.

    (3)    Where applicable relative to Contributing Insurance Policy(s) described in either subparagraphs D. (1) or D. (2) above, in the event the **Insured** is providing contributing or self-insurance in any of the layer(s) of insurance, and such other Contributing Insurance Policies contain aggregate Program Limits of Liability, the **Insured's** contributing or self-insurance for those coverages shall be deemed to be aggregated also

## 15.   SUBROGATION

A.    Any release from liability entered into by the **Insured** prior to loss hereunder shall not affect this **Policy** or the right of the **Insured** to recover hereunder. The right of subrogation against the **Insured**, the **Insured's** officers, directors, and employees, and at the option of the **Insured** against a tenant, vendor, supplier or customer of the **Insured**, is waived.

B.    In the event of any payment under this **Policy**, the **Company** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery therefore. The **Insured** shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the **Company** to secure such right. The **Company** will act in concert with all other interests concerned, for example the **Insured** and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. The **Insured's** interest in such case shall be the applicable deductible and any uninsured loss. If there should be no recovery, the expense of proceedings shall be borne by the company(ies) instituting the proceedings.

## 16.   SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and Underlying Insurance, recovered or received prior to a loss settlement under this **Policy**, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this **Policy**, such net amounts recovered shall be divided between the interests concerned, that is the **Insured** and any

Domestic

other company(ies) participating in the payment of any loss, in the proportion of their respective interests.

17. **MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the **Company** shall be limited to the value of the part or parts lost, damaged or destroyed or, at the **Insured's** option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

18. **SUSPENSION**

Upon discovery of a dangerous condition with respect to any boiler, fired or unfired pressure vessel and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power, any representative of the **Company** may immediately suspend the insurance with respect to an **Accident** to said property by written notice mailed or delivered to the **Insured** at the mailing address of the **Insured**.

19. **ERRORS OR OMISSIONS**

Any unintentional error or omission made by the **Insured** shall not void or impair the insurance hereunder, provided the **Insured** reports such error or omission as soon as reasonably possible after discovery by the department of the **Insured** responsible for insurance matters.

20. **NOTICE OF LOSS**

As soon as practicable after any direct physical loss, damage or destruction occurring under this **Policy** is known to the department of the **Insured** responsible for insurance matters, the **Insured** shall report such loss or damage to the **Insured's** claims contact at Marsh, for transmission to the **Company**. Any delay by the **Insured** in providing notice shall not affect the **Insured's** right to coverage under this **Policy**, except if and to the extent that the **Company** proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

21. **PROOF OF LOSS**

If legally required, the **Insured**, at the request of the **Company**, will render a signed and sworn proof of loss to the **Company** or its appointed representative within 90 days of such request stating: the place, time, and cause of the direct physical loss, damage or destruction; the interest of the **Insured** and of all others; the value of the property involved in the loss; and the amount of direct physical loss, damage, or destruction.

22. **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to the **Insured** or order, whose receipt shall constitute a release in full of all liability under this **Policy** with respect to such loss.

Domestic

23. **PARTIAL PAYMENT OF LOSS**

In the event of a loss insured by this **Policy**, it is understood and agreed that the **Company** will issue partial payment(s) of claim subject to the **Policy** provisions; such payment(s) shall not be less than the undisputed estimate of direct physical loss, damage or destruction between the **Insured** and the **Company**.  It is further agreed that the **Company** shall allow said partial payment(s) irrespective of whether or not property has been repaired or replaced.

24. **APPRAISAL**

If the **Insured** and the **Company** fail to agree on the amount of the loss, either party may demand an appraisal process within 60 days after the **Company's** receipt of proof of loss. Within 15 days following the receipt of such a demand, each party shall select its own competent appraiser. The party-selected appraisers, within 15 days following their selection, shall in turn select a competent and disinterested umpire. At a reasonable time and place, the party-selected appraisers shall appraise the loss based on the Valuation conditions within the **Policy**. If the appraisers fail to agree on an amount, they shall promptly submit their differences to the umpire for a decision. Within 30 days following such submission, the umpire shall issue a written award determining the amount of loss, which shall be paid by the **Company** within 30 days thereafter. Each party shall pay its selected appraiser and the parties shall bear equally the costs of the umpire and other appraisal process expenses.

Nothing in this clause shall preclude either the **Insured** or the **Company** from commencing suit or otherwise affect the other terms and conditions of this **Policy**. However, where the **Insured** or the **Company** has demanded an appraisal process, the **Insured** and the **Company** agree not to commence any action earlier than 90 days following the appraisal process demand.

25. **PAIR OR SET**

Except as provided under the Machinery Clause 17 and paragraph 3.C., Consequential Reduction in Value of the Policy Provisions, in the event of direct physical loss, damage or destruction insured against to any article or articles which are a part of a pair or set, the measure of such direct physical loss, damage or destruction to such article or articles shall be, at the **Insured's** option:

A. the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss, damage or destruction be construed to mean total loss of the pair or set; or

B. the full value of the pair or set provided that the **Insured** surrenders the remaining article or articles of the pair or set to the **Company**.

26. **ASSISTANCE AND COOPERATION OF THE INSURED**

The **Insured** shall reasonably cooperate with the **Company**, and, at the **Company's** reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

27. **SUE AND LABOR**

Domestic

In case of actual or imminent direct physical loss, damage or destruction insured by this **Policy**, except imminent direct physical loss, damage or destruction with respect to an **Accident,** it shall, without prejudice to this insurance, be lawful and necessary for the **Insured**, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder. In the event of direct physical loss, damage or destruction the acts of the **Insured** or of the **Company** in recovering, saving, and preserving the insured property shall not be considered a waiver or an acceptance of abandonment. The **Company** shall pay the expenses so incurred including resulting **Time Element** loss.

28. <u>PAYMENT OF LOSS</u>

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by the **Company** or its appointed representative.

29. <u>REINSTATEMENT</u>

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Clause F. of the Declarations, no loss hereunder shall reduce the amount of this **Policy**.

30. <u>SUIT AGAINST THE COMPANY</u>

No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the **Insured** shall have fully complied with all the requirements of this **Policy**. If there is any dispute between the **Insured** and the **Company** as to whether the **Insured** has fully complied with all the requirements of this **Policy**, such a dispute may be resolved in a suit or action on the **Policy** for recovery of any claim. The **Company** agrees that any action or proceedings against it for recovery of any loss under this **Policy** shall not be barred if commenced within two years and one day after the **Insured** provides notice to the **Company** in accordance with the Notice of Loss Clause above, which period shall be tolled from the date of notice until the date that the **Insured** receives the **Company's** "Final Coverage Decision" (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the mailing address of the **Insured** listed in the Policy Declarations such limitation period is invalid or if the laws of the jurisdiction in which any such action is brought permit a longer period of time within which to commence such a suit. A Final Coverage Decision must be identified as such in writing to the **Insured.**

Domestic

Furthermore, any tolling of the limitations period shall not preclude the **Insured** from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time. Prosecution of a suit by the **Insured** shall not be barred due to the failure of the **Company** to timely advise and notify the **Insured** of the expiration of any applicable dates to file and commence said suit.

It is agreed that in the event of the failure of the **Company** to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this **Policy**, the **Company**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The **Company** shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the **Insured** in any such court.

31.  **EVIDENCE OF INSURANCE**

    A.  **Certificates of Insurance**

        Any certificate of insurance issued in connection with this **Policy** shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any additional insured(s), loss payee(s), or mortgagee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any additional insured(s), loss payee(s), or mortgagee(s) are so named, this **Policy** shall be deemed to have been endorsed accordingly subject to all other terms, conditions and exclusions stated herein.

    B.  **Memoranda of Insurance**

        With respect to any Memoranda of Insurance displayed on an internet web-site, any party(ies) which the **Insured** is contractually required to include as an additional insured(s), loss payee(s), or mortgagee(s) is granted such status under this **Policy** as such interest may appear upon notification of such interest by the **Insured** to Marsh or the **Company**. Coverage under the **Policy** applies only if such notice has been given and to the extent of the coverage required by such contractual requirement and for the **Program** Limits of Liability specified in such contractual requirement, but in no event for insurance not afforded by the **Policy** nor for **Program** Limits of Liability in excess of the applicable **Program** Limits of Liability of the **Policy**.

    C.  (1)  The existence of more than one **Insured**, additional insured or other interests shall not serve to increase the **Program** Limits of Liability of the **Policy**.

        (2) The **Company** hereby authorizes Marsh to issue any Certificate of Insurance and to display Memoranda of Insurance, including any Mortgagee or Loss Payee Clauses consistent with the foregoing.

32.  **MORTGAGEHOLDERS CLAUSE**

    A.  The term mortgage holder includes trustee.

Domestic

B. The **Company** will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the **Policy** or Evidence of Insurance in their order of precedence, as interests may appear.

C. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

D. If the **Company** denies the **Insured's** claim because of the **Insured's** acts or because the **Insured** has failed to comply with the terms of this **Policy**, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1) Pays any premium due under this **Policy** at the request of the **Company** if the **Insured** has failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from the **Company** because of the **Insured's** failure to do so; and

(3) Has notified the **Company** of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this **Policy** will then apply directly to the mortgage holder.

E. If the **Company** pays the mortgage holder for any loss or damage and denies payment to the **Insured** because of the **Insured's** acts or because the **Insured** has failed to comply with the terms of this **Policy**:

(1) The mortgage holder's rights under the mortgage will be transferred to the **Company** to the extent of the amount the **Company** pays; and

(2) The mortgage holder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At the Company's option, the **Company** may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, the **Insured's** mortgage and note will be transferred to the **Company** and the **Insured** will have its remaining mortgage debt paid to the **Company**.

F. If the **Company** cancels this **Policy**, the **Company** will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if the **Company** cancels for the **Insured's** non-payment of premium; or
(2) 30 days before the effective date of cancellation if the **Company** cancels for any other reason.

G. If the **Company** elects not to renew this **Policy**, the **Company** will give written notice to the mortgage holder at least 30 days before the expiration date of this Policy.

Domestic

### 33. CANCELLATION

A.   This **Policy** may be canceled at any time at the request of the **Insured** or it may be canceled by the **Company** by mailing to the **Insured** at the Mailing Address shown in Clause B. of the Policy Provisions and to the additional insureds/loss payees/mortgagees indicated on the certificates of insurance or endorsements hereunder issued during the term of this **Policy**, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.  The earned premium shall be computed on a pro-rata basis.

B.   The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the cancellation notice shall become the end of the **Policy** period. Delivery of such written notice either by the **Insured** or by the **Company** shall be equivalent to mailing.

C.   Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D.   In the event of non-payment of premium this **Policy** may be canceled by the **Company** by mailing to the **Insured** at the Mailing Address shown in Clause B. of the Policy Provisions and to the additional insureds/loss payees/mortgagees indicated on the certificates of insurance or endorsements hereunder issued during the term of this **Policy** stating when, not less than 10 days thereafter, such cancellation shall be effective.  Reinstatement of coverage shall be effective immediately upon receipt of premium by the **Company**.

E.   In the event of cancellation of this **Policy** by the **Company**, except cancellation for non-payment of premium, the annual aggregate deductible, if any, shall be computed on a pro rata basis predicated on that portion of the **Policy** year that has lapsed up to the date such cancellation becomes effective. If losses assumed by the **Insured** exceed the amount that would have been sustained if computed on such a pro rata basis, the **Company** shall promptly pay the **Insured** their share of the difference between the assumed losses and the pro rata amount.  Cancellation by the **Insured** shall not result in any adjustment of the annual aggregate deductible.

### 34. NON-RENEWAL

This **Policy** may be non-renewed by the **Company** for any reason permitted by law by mailing to the **Insured** at the Mailing Address shown in Clause B. of the Declarations and to the additional insureds/loss payees/mortgagees indicated on certificates of insurance or endorsements hereunder issued during the term of this **Policy**, written notice of non-renewal provided at least 60 days but not more than 120 days before the expiration date of this **Policy**.

### 35. VALUES

Domestic

Any statement of values and/or property provided to the **Company** are for premium purposes only and shall not limit the coverages provided by this **Policy**.

36. <u>**TITLES OF PARAGRAPHS**</u>

The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

37. <u>**CONFORMANCE**</u>

The terms of this **Policy** which are in conflict with the applicable statutes of the jurisdiction wherein this **Policy** is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this **Policy** and do not bar a **Policy** from providing broader coverage.

38. <u>**CROSS LIABILITIES**</u>

The inclusion herein of more than one person or entity, as **Insured**, shall not operate to increase the limits of the **Company's** liability nor the deductible amounts to be borne by the **Insured**. Except with respect to **Program** Limits of Liability and deductible amounts, the terms of this **Policy** shall apply separately to each person or entity covered as **Insured** in the same manner and to the extent as though a separate **Policy** had been issued to each such person or entity.

39. <u>**ABANDONMENT**</u>

There may be no abandonment of any property to the **Company**.

40. <u>**ASSIGNMENT**</u>

This **Policy** may not be assigned without the written consent of the **Company**.

41. <u>**LIBERALIZATION**</u>

If during the period that insurance is in force under this **Policy**, or within six months before this **Policy's** inception, any authorized endorsement or filed rules or regulations affecting the same are revised or approved by statute so as to broaden this insurance without an additional premium charge, then such extended or broadened insurance shall inure to the benefit of the **Insured**.

42. <u>**BREACH OF WARRANTY**</u>

Domestic

If a breach of any warranty or condition in this **Policy** occurs, which breach, by the terms of the warranty or condition, shall operate to suspend or void this insurance, the suspension or voidance due to such breach shall be effective only during the continuance of such breach, and then only with respect to the property at the location where the warranty or condition has reference and with respect to which the breach occurs.

Domestic

## DEFINITIONS

The following terms wherever used in this **Policy** shall mean as follows:

**A.    Accident**

(1)    **Accident** means:

(a)    any condition or **Occurrence** within boilers or fired or unfired vessels owned by, operated by, or under the control of the **Insured** and subject to pressure or vacuum including piping or apparatus attached to and forming a part thereof, except that the words "any condition or **Occurrence**" shall not include explosions, other than explosion of the parts of a steam boiler containing steam or water, steam piping, steam turbines, or steam engines;

(b)    mechanical breakdown of any machine or apparatus arising out of any condition or **Occurrence** within such machine or apparatus;

(c)    electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

However, the term "**Accident**" does not include:

(i)    loss or damage from fire or from the use of water or other means to extinguish fire; and

(ii)    the normal operation of any safety or protective device;

(2)    The term "**Accident**" shall not apply to the following property:

(a)    property in transit;

(b)    property while in the course of construction, erection, installation, or assembly;

(c)    electronic data processing systems used for administrative, statistical, or accounting purposes, **Media** and **Data;**

(d)    any sewer piping, any piping forming a part of a fire protective system, or any water piping other than:

(i)    boiler feed water piping;
(ii)    boiler condensate return piping;
(iii)    water piping used in a heat transfer system for cooling, humidifying, or space heating purposes;
(iv)    any vehicle, aircraft, or self-propelled equipment or floating vessel;
(v)    any elevator, crane, ladle or bucket, hoist, power shovel, drag line, excavator, scale, or conveyor, but not excluding any pressure vessel, gears, engines or electrical equipment used with a machine.

Domestic

B. **Ammonia Contamination**

**Ammonia Contamination** means the loss with respect to damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration as a result of any one **Accident**.

C. **Company(ies)**

**Company(ies)** means the insurance company(ies) providing the insurance under this **Policy**.

D. **Data**

**Data** means facts, information, concepts or instructions in a form usable for communications, interpretation or processing by automatic means. It includes computer programs or software or organized or stored information.

E. **Earthquake**

**Earthquake** means a shaking or trembling of the earth that is tectonic in origin.
However, ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein caused by such **Earthquake** shall not be considered **Earthquake** within the terms and conditions of this **Policy**.

F. **Fine Arts**

**Fine Arts** means paintings; etchings; pictures; tapestries; art glass; art glass windows; valuable rugs; statuary; sculptures; bronzes; marbles; bric-a-brac; porcelains; rare glass; antique furniture; silver and jewelry; rare books; manuscripts; photographs (positives and negatives); lithographs; illustrations; gallery proofs; original records; and similar property of rarity, historical value, or artistic merit.

G. **Finished Stock**

**Finished Stock** means stock which in the ordinary course of the **Insured's** business is ready for packing, shipment or sale.

H. **Flood**

**Flood** means a rising and overflowing of a body of water onto normally dry land including that which results from tsunami, tidal wave, seismic sea wave, or series thereof caused by any one disturbance. Such definition does not include **Storm Surge**. However, ensuing physical loss, damage or destruction arising from a peril not otherwise excluded herein caused by such **Flood** shall not be considered **Flood** within the terms and conditions of this **Policy**.

Domestic

I.    **Fungus**

**Fungus** means any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including **Mold(s)**, rusts, mildews, yeasts, smuts and mushrooms. **Mold** means any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce **Mold(s)**. Both definitions include any spores or toxins created or produced by or emanating from such **Fungus** or **Mold**. **Spores** mean any dormant or reproductive body produced by or arising or emanating out of **Fungus** or **Mold**.

J.    **Land Improvements**

**Land Improvements** mean any alteration to the natural condition of the land whether natural or manmade by grading, landscaping, earthen dikes or dams, and additions to land such as drainage systems, pavements, roadways or similar works.

K.    **Media**

**Media** means materials upon which **Data** is recorded including, but not limited to, paper tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

L.    **Merchandise**

**Merchandise** means goods kept for sale by the **Insured** which are not the product of manufacturing operations conducted by the **Insured**.

M.    **Miscellaneous Unnamed Location**

**Miscellaneous Unnamed Location** means any unreported property of the type insured situated within the Policy Territory which does not fit the definition of a Newly Acquired Location under the terms of this **Policy**. This definition does not include property in transit.

N.    **Named Windstorm**

**Named Windstorm** means a storm or weather disturbance which is identified by name by any government authorized meteorological authority such as the National Oceanic and Atmospheric Administration's (NOAA) National Hurricane Center. For purposes of this definition, **Named Windstorm** shall include direct physical loss, damage or destruction caused by:

(1)    direct action of wind including ensuing **Storm Surge**;
(2)    any material, object or debris that is carried, propelled or in any manner moved by such windstorm;
(3)    any tornado(s) that is the result of actions or effects of such windstorm;
(4)    hail that is the result of actions or effects of such windstorm;
(5)    lightning that is the result of actions or effects of such windstorm;
(6)    rain or water (not constituting a **Flood**), whether the rain or water is driven by wind or not, that enters a building or structure insured under this **Policy** through an opening(s) created by the direct action of such windstorm.

Domestic

Once the Named Windstorm, as declared by any government authorized meteorological authority, no longer meets the parameters of a Named Windstorm, as set forth by a government authorized meteorological authority, then all subsequent loss, damage or destruction will not be considered caused by a Named Windstorm.

However, ensuing physical loss, damage or destruction not contained in paragraphs (1) to (6) above and not otherwise excluded herein shall not be considered **Named Windstorm** within the terms and conditions of this **Policy**.

**O.    Occurrence**

**Occurrence** means all direct physical loss, damage or destruction insured against arising out of or caused by one event, except:

(1)    With respect to theft, the term **Occurrence** as referred to above means the sum total of all theft losses of insured property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this **Policy**.

(2)    With respect to an **Accident**, if an initial **Accident** causes other **Accidents**, all direct physical loss, damage or destruction shall be considered one **Accident**.

(3)    With the exception of direct physical loss, damage or destruction caused by **Earthquake** and **Named Windstorm**, in situations where an event of direct physical loss, damage or destruction is designated by Insurance Services Office's Property Claim Services (PCS) unit with a PCS Catastrophe Serial Number also known as an ISO CAT Code, all such direct physical loss, damage or destruction insured against under this **Policy** occurring as part of such PCS Catastrophe Serial Number shall be considered "one **Occurrence**" regardless of the time period involved.

(4)    Each loss by **Earthquake** shall constitute a single **Occurrence** hereunder if more than one **Earthquake** shock occurs within any period of 168 hours during the term of this **Policy**, the beginning of which 168 hour period may be determined by the **Insured.**

(5)    Each loss by **Named Windstorm** shall constitute a single **Occurrence** if resulting loss, damage or destruction arising from such Named Windstorm occurs within a period of 72 hours, the beginning of which period may be determined by the **Insured**.

Domestic

(6) Each loss by **Flood** shall constitute a single **Occurrence** if any **Flood** occurs within a period of the continued rising or overflow of any body of water and the subsidence of same; or any **Flood** which results from any tsunami, tidal wave, seismic sea wave, or series thereof caused by any one disturbance.

(7) Should any time period referred to in Clauses (4) and (5) above commence prior to expiration or cancellation date of this **Policy**, the **Company** shall pay all such **Earthquake** and **Named Windstorm** losses occurring during such period as if such period fell entirely within the term of this **Policy**.

**P.    Ordinary Payroll**

**Ordinary Payroll** means the entire payroll expense for all employees of the **Insured** except officers, executives, department managers, employees under contract, and other important employees as determined by the **Insured**.

**Q.    Policy**

**Policy** means the agreed terms and conditions contained herein, including any subsequent endorsements that define the **Company's** participation in an overall property insurance **Program**. Any **Company** form, jacket, or standard fire policy issued in conjunction with this **Policy** is hereby replaced in its entirety by this **Policy** and its endorsements.

**R.    Pollutant**

**Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, (except smoke resulting from the sudden, unusual and faulty operation of any stationary furnace, heating or cooking unit situated at an insured location) including smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, **Mold**, spores, vaccines and waste. Contaminant means an impurity resulting from the mixture or contact of a substance with a foreign substance. Waste includes materials to be recycled, reconditioned or reclaimed as well as disposed of.

**S.    Program**

**Program** means the sum of all policies issued to the **Insured**, inclusive of any self- insurance, which may be arranged in one or more layers that provide coverage up to an agreed **Program** limit as shown in Clause E. Participation of this form.

**T.    Raw Stock**

**Raw Stock** means materials and supplies in the state in which the **Insured** receives them for conversion by the **Insured** into **Finished Stock**, including supplies consumed in such conversion or in the service rendered by the **Insured**.

Domestic

U.  **Securities**

**Securities** mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and include revenue and other stamps in current use, tokens and tickets but does not include money.

V.  **Soft Costs**

**Soft Costs** means those costs over and above the costs which normally would have been incurred with respect to property while in the course of construction, erection, installation, and assembly including, but not limited to:

(i)   the amount of actual interim or construction financing interest, or additional interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;
(ii)  realty taxes and ground rent if any;
(iii) advertising and promotional expenses;
(iv)  cost of additional commissions;
(v)   cost of returning any commitment fees received from prospective tenant(s) or purchaser(s);
(vi)  architects, surveyors, legal, consulting engineers or other fees not otherwise covered elsewhere under this **Policy**;
(vii) project administration expense;
(viii) insurance premiums.

W.  **Special Flood Hazard Areas** (SFHA)

**Special Flood Hazard Areas** (SFHA) means:

(1)   Areas, which at the time of direct physical loss, damage or destruction, have been designated on a Flood Insurance Rate Map (FIRM) published by the Federal Insurance Administration (FIA) to be **Flood** zones A, AO, AH, A1–A30, AE, A99, AR, AR/A, AR/AE, AR/A1–A30, AR/AH, AR/AO, V, V1-V30, and VE; or

(2)   For areas where the National Flood Insurance Program is not in effect: an area in a floodplain that has a 1% or greater chance of a **Flood** occurring equal to or exceeding the Base Flood Elevation (BFE) in any given year. For the purposes of this calculation, Federal Emergency Management Agency (FEMA) guidelines shall be used.

For purposes of determining which areas qualify as **Special Flood Hazard Areas** as specified in paragraph (1) above, only those Flood zone maps which were in effect at the time of the **Flood** loss shall apply. The **Insured** and the Company shall have the right to review such map(s) and appeal the Flood zone designation(s) to FEMA. If after the appeal, such map(s) or designation(s) are found to be incorrect, then the **Company** shall recognize such corrected map(s) or designation(s) as applying at time of loss. Such appeal must be made within 180 days of such loss.

Domestic

X.  **Sprinkler Leakage**

**Sprinkler Leakage** means direct loss by:

(1)  water or other substance discharged from within any part of the fire protective equipment contained within the premises insured herein or the adjoining premises;

(2)  collapse or fall of tanks forming a part of the fire protective equipment or the component parts or supports of such tanks;

(3)  freezing of fire protective equipment.

The term "fire protective equipment" includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes but does not include:

(a)  branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

(b)  any underground water mains or appurtenances located outside of the described premises and forming a part of the public water distribution system;

(c)  any pond or reservoir in which the water is impounded by a dam.

Y.  **Stock in Process**

**Stock in Process** means **Raw Stock** which has undergone any aging, seasoning, or other processing by the **Insured** but which has not become **Finished Stock**.

Z.  **Storm Surge**

**Storm Surge** means water driven inland from coastal waters by high winds and low atmospheric pressure. Such definition shall not be considered **Flood**.

AA.  **Time Element**

**Time Element** means Business Interruption, Extra Expense, Rental Value, Royalties, and **Soft Costs** loss as insured under the **Policy** including Time Element Extensions and Provisions related thereto.

BB.  **Valuable Papers and Records**

**Valuable Papers and Records** means written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts, but not including money and/or **Securities**.

Domestic

CC. **Water Damage**

**Water Damage** means the loss to air conditioning and refrigerating systems and water piping used for humidifying, cooling or space heating purposes damaged by water as a result of any one **Accident**.

Attaches to and forming part of **Policy** No. 0310-2242-1A of the Allied World Assurance Co., (U.S.) Inc..

Signed _____

(Authorized Signature)

Domestic

## ADDENDUM A - New Madrid Earthquake Zone Counties

| STATE | COUNTIES |
|-------|----------|
| Arkansas | Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Mississippi, and Poinsett |
| Illinois | Alexander, Bond, Clinton, Crawford, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Madison, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Saline, St. Clair, Union, Washington, White, and Williamson |
| Indiana | Pike, Posey, Vanderburgh and Warrick |
| Kentucky | Ballard, Calloway, Carlisle, Fulton, Graves, Hickman, Livingston, Marshall, and McCracken |
| Mississippi | Bolivar, Coahoma, De Soto, Marshall, Tate, and Tunica |
| Missouri | Bollinger, Butler, Cape Girardeau, Dunklin, Franklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Pemiscot, Perry, Reynolds, Scott, , St. Charles, St. Francois, St. Louis, St. Louis City, Ste. Genevieve, Stoddard, Warren, Washington, and Wayne |
| Tennessee | Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, and Weakley |

Domestic

## ADDENDUM B - Pacific Northwest Earthquake Zone Counties and Cities

| STATE | COUNTIES |
|---|---|
| Washington | Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston, and Whatcom |

Domestic

## ADDENDUM C - Wind Counties

| UNITED STATES OF AMERICA | |
|---|---|
| **STATE** | **COUNTIES/ PARISHES** |
| Alabama | Baldwin, Mobile |
| Florida | Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dixie, Duval, Escambia, Flagler, Franklin, Glades, Gulf, Hendry, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Miami-Dade, Monroe, Nassau, Okaloosa, Okeechobee, Palm Beach, Pasco, Pinellas, Sarasota, St. Lucie, St. Johns, Santa Rosa, Taylor, Volusia, Wakulla, Walton, Washington |
| Georgia | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| Hawaii | Entire State |
| Louisiana | Ascension, Assumption, Calcasieu,, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, Saint Bernard, Saint Charles, Saint James, Saint John The Baptist, Saint Martin, Saint Mary, Saint Tammany, Tangipahoa Terrebonne, Washington, Vermilion |
| Mississippi | Hancock, Harrison, Jackson |
| North Carolina | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Georgetown, Horry, Jasper |
| Texas | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kennedy, Kleberg, Liberty, Matagorda, Nueces, Orange. Refugio, San Patricio, Victoria, Willacy |
| Virginia | Accomack, Chesapeake, Gloucester, Hampton, Isle of Wright, James City, Lancaster, Matthews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Suffolk, Surry, Virginia Beach, Westmoreland, Williamsburg, York |

| Commonwealths and Territories of The United States of America | |
|---|---|
| Puerto Rico | Entire Commonwealth |
| U.S. Virgin Islands | Entire Territory |

Domestic