UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| CROSSWATER CANYON, INC. and ARK ENCOUNTER, LLC<br><br>  Plaintiffs,<br><br>-v-<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.) Inc.; CERTAIN UNDERWRITERS AT LLOYD'S; HDI GLOBAL SPECIALTY SE; BLACKBOARD SPECIALTY INSURANCE COMPANY; and GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA<br><br>  Defendants. | Civil Action No. 2:19-cv-64-DLB-CJS<br><br>Judge David L. Bunning |

### ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S
### REPLY IN SUPPORT OF ITS MOTION TO BIFURCATE

Defendant, Allied World Assurance Company (U.S.), Inc. ("Allied World"), by and through its attorneys, submits this Reply in Support of its Motion to Bifurcate.

### PREFATORY STATEMENT

Plaintiffs' opposition to the motion ignores the overwhelming majority of cases in Kentucky, which have bifurcated breach of contract coverage claims and bad faith claims for purposes of discovery and trial. Plaintiffs offer no credible rationale to prevent bifurcation and instead base their entire opposition on distinguishable cases that do not address any coverage issues that are at issue here. While Plaintiffs attempt to characterize this matter as a dispute over damages, the real issue is whether there is coverage for the claim under the policies. To recover

under the policies, Plaintiffs must establish that covered property sustained physical loss or damage caused by a covered peril. Thus, Plaintiffs must first establish that excess soil which was disposed over the eastern side of the ridge of the premises creating the subject eastern slope is covered property under the policies. Because the policies specifically exclude land, the soil pile is not covered property. Additionally, Plaintiffs must establish that the failure of the road was caused by a covered peril. Inasmuch as the policy excludes the cost of making good the faulty design and workmanship to repair the premises, the policy does not cover the costs sought by Plaintiffs to install a retaining wall, underpin the soil, or install special soil. The determination of damages, if any, puts the proverbial cart before the horse as Plaintiffs have made a claim for property not covered in the policy allegedly damaged by an excluded peril. These coverage issues are separate and distinct from Plaintiffs' bad faith claims.

Discovery relative to the breach of contract claims will involve gathering evidence from the contractors, engineers, witnesses of the event and experts to determine whether defective design and faulty workmanship caused the alleged damages sought. Evidence to determine whether the policy exclusions apply to bar Plaintiffs' claim does not overlap in any meaningful way with the proof necessary for Plaintiffs to sustain their purported bad faith claim. The parties would incur unnecessary expenses and delays if they were required to engage in discovery on the bad faith claims prior to the resolution of the breach of contract claims.

## **ARGUMENT**

I. **Kentucky Courts Bifurcate Bad Faith Claims from Coverage Claims to Allow the Courts to First Determine whether the Terms of the Policies Afford Coverage for the Insured's Claim.**

The Court must first resolve the coverage issues and determine whether there is coverage for Crosswater's claim under the terms of the Policy. Thus, the Court must determine whether:

(1) Crosswater's claim for damage to the land is barred by the exclusion for land; (2) whether the faulty workmanship or defective design exclusions bars the claim; and (3) whether the latent defect or wear and tear exclusion bars the claim. If the Court determines that aforementioned exclusions do not bar coverage for Crosswater's claim, then the Court would determine the amount of covered damages.

Plaintiffs' reliance on *Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213 (W.D. Ky. March 8, 2011) is misplaced as the Court in *Tharpe* did not address any coverage issues or determine whether the language of the policy barred the insured's claim as the Court must do here. Rather, in *Tharpe*, the court only determined the amount of covered damages. The insurer asserted that the damages claimed on a chiropractic bill totaling $9,365.00 were excessive and unnecessary. The court held that the evidence offered by the insurer as to whether it reasonably reviewed the chiropractor's bill would be the same evidence offered to defeat the bad faith claim. *Id*. at 215.

Here, to determine whether there is coverage for Plaintiffs' claims under the policies, the insurers would offer evidence from engineers, contractors, and experts to determine whether the faulty workmanship exclusion bars the claim. This highly factual evidence would be far different from the evidence offered to defeat Plaintiffs' bad faith claims.

The Western District recently rejected the insured's reliance on *Tharpe* in *Live Nation Worldwide, Inc. v. Secura Ins. Co.*, 298 F.Supp.3d 1032, 1036 (W.D. Ky. 2018), stating:

> *Tharpe* does not help Live Nation in this instance. This is not a situation where a ruling on the coverage issue is inextricably tied to whether Secura denied Live Nation a full defense and indemnification in bad faith. The coverage issue will likely be decided on the basis of the nature of the covered event and language of the policy, a separate issue from Secura's conduct in denying the claim.

As in *Live Nation*, the Court must first examine the language of the policy to decide whether Plaintiffs' claim is covered, which is separate from the insurers' conduct in determining that several exclusions in the policies barred Plaintiffs' claim.

The Court also rejected *Tharpe* in *Robinson v. Nationwide Mut. Fire. Ins.* Co., 2011 WL 13235026 (W.D. Ky. April 5, 2011). Here, after a fire destroyed the insured's home, the insured filed suit alleging that the insurer breached its contract and engaged in bad faith and violated Kentucky's Unfair Claims Settlement Practices Act ("UCSPA") by failing to pay the insured's claim. The insurer moved to bifurcate the claims asserting that there is no need to pursue the bad faith claims if there is no coverage for the loss. *Id*. at *1. The court rejected the insured's argument that the claims were interwoven as in *Tharpe*. The court noted that "the increasing trend in the federal courts appears to be to apply bifurcation and stay of discovery to first-party cases." *Id.* at *3. The court further held:

> [b]ifurcation indeed would serve the interests of not only the Court but the parties as well. The Court does not believe that the contract and tort claims are so intertwined as in *Tharpe* that bifurcation would be a pointless exercise. A distinctly legal issue exists as to whether the alleged actions of [the insured] in supposedly starting a fire while attempting to cook methamphetamine are a valid basis for exclusion under either the "increase the risk" or criminal acts exclusions of the policy. How the adjusters and other employees for [the insurer] conducted their professional and statutory duties in the administration of the [insureds'] fire loss claims is a matter that in the Court's view is sufficiently distinct that the resolution of the underlying contractual question **is a first and best stop before the parties proceed to the complex issues of bad faith and violation of the USCPA**.

*Id*. at *4 (emphasis added). Therefore, the court bifurcated the breach of contract issues from the bad faith claims and held discovery on same in abeyance pending resolution of the contract issues.

4

In *South Fifth Towers, LLC v. Aspen Ins. UK Ltd*., 2015 WL 13714169 *3 (W.D. Ky. 2015), the court rejected *Tharpe* and *Lively v. USAA Cas. Ins. Co.*, 2009 WL 1116327 (E.D. Ky. April 24, 2009), which Plaintiffs also attempt to rely on, stating:

> [c]ontrary to [the insured's] protestations, the Court sees little overlap between the contract coverage claims and the bad faith claims. The reasonableness of the manner in which [the defendants] handled [the insured's] insurance claim does not appear to run to the question of whether [the insurer] has a duty of coverage under the contract in the first insurance. Only after such a duty is established is there any possibility that the bad faith claims will be a basis for discovery by [the insured]. Consequently, a stay of discovery on the claims contained in [the extra contractual claims] is warranted.

As in *South Fifth Towers*, there is little overlap between the contract coverage claims and the bad faith claims. The reasonableness of the manner in which the insurers' handled the claim does not run to the question of whether the exclusions in the policies barred Plaintiffs' claim. *See also Suddarth v. Motorists Mut. Ins. Co.*, 2014 WL 12726536 *3 (W.D. Ky. August 13, 2014) (rejecting the proposition that *Tharpe* and *Lively* stand for the proposition that bifurcation and abeyance of discovery is disfavored).

Plaintiffs also rely on *Hoskins v. Allstate Prop. & Cas. Ins. Co.*, 2006 WL 3193435 (E.D. Ky. 2006), which actually supports Allied World's positions, as the Court held that bifurcating the claims would promote justice and fairness and expedite the ultimate resolution of claims. In *Hoskins*, the insured sought coverage for damage to his home and personal property after a fire destroyed the home. This Court held that Kentucky law supported bifurcation as fairness and justice would be promoted by the bifurcation of the contract and tort issues and expedite the ultimate resolution of the claims. *Id.* at *2. Specifically, the Court explained:

> [t]he Court believes that bifurcation of [the insureds'] bad faith claims is appropriate. If [the insurer] prevails on this claim at trial, there will be no basis for the Plaintiff to proceed on the remainder of the case. Likewise, if [the insurer] is successful, there will be no need to engage in the inevitable

5

> battle concerning production of investigatory files. As a result, the Court finds that inquiry into the basis for the bad faith claims should be abated until the necessity for such discovery is certain. Moreover, judicial economy does not dictate that discovery on both these issues proceed simultaneously. Therefore, in order to avoid any prejudice, the Court believes that discovery regarding the Plaintiffs' bad faith claims should be stayed. Those claims will be held in abeyance until the underlying contract issue has been resolved. Upon resolution of the breach of contract claim, the parties, if necessary, will be allowed to pursue discovery on the bad faith claims.

*Id.* at *3.

Plaintiffs' reliance on *Woody's Restaurant, LLC v. Travelers Cas. Ins. Co. of Am.*, 2014 WL 108317 (E.D. Ky. Jan 9. 2014) is misplaced as this Court was not confronted with the issue of determining whether any applicable exclusions barred the insured's claim in *Woody's*. Rather, the court only had to determine the amount of coverage provided under the policy. Here, the Court must resolve the coverage issues and determine whether the faulty workmanship or defective design exclusions, the land exclusion, and/or the wear and tear and latent defect exclusions bar Plaintiffs' claim.

In *Walker v. Seneca Ins. Co., Inc.*, 2018 WL 4462232 (W.D. Ky. Sept. 17, 2018), the Court rejected the reasoning of *Woody's* and granted bifurcation stating:

> [t]he common thread in the cases denying bifurcation is that – based on the particular facts of each case – the factual and legal issues in a plaintiff's contract claim are inextricably intertwined with his bad faith claims. This is not a situation where a ruling on the coverage issue is inextricably tied to whether [the insurer] denied the Plaintiffs coverage in bad faith. **The coverage issue will likely be decided on the basis of the nature of the covered event and language of the policy, a separate issue from [the insurer's] conduct in denying the claim**. In light of the dispositive nature of Plaintiff's breach-of-contract claim and the possibilities of confusion and prejudice resulting from a single trial, there is ample justification to bifurcate the trial of this action.

*Id*. at * 2 (emphasis added). Therefore, the court granted the motion to bifurcate and stay discovery. Plaintiffs' claim is factually similar as the Court must first determine whether the

6

language of the policies bars Plaintiffs claim.  Determining whether there is coverage under the policies for the claim is a separate issue from the insurers' determination that the policies did not cover the damage.

Following the aforementioned authorities, Plaintiffs' bad faith claims should be bifurcated from the breach of contract claims to promote judicial economy and avoid prejudice. If the Court failed to bifurcate the claims, Allied World would be forced to incur expenses in litigating bad faith claims, which might never arise.  Moreover, Allied World could be prejudiced at trial by the jurors' confusion of the breach of contract and bad faith claims as trying both claims before a single jury would needlessly interject bad faith issues into the coverage dispute, risking confusion of the issues.

**II.     Plaintiffs Ignored the Overwhelming Majority of Cases in which Kentucky Courts Stay Discovery on Bad Faith Claims Pending the Resolution of the Breach of Contract Claims.**

Plaintiffs ignored the numerous cases cited by Allied World, which support staying discovery until the resolution of the underlying breach of contract claim and rely solely on *Woody's*, 2014 WL 108317.  As addressed above, *Woody's* can be distinguished from this case as the Court did not have to determine whether any exclusions in the policy barred the insured's claim; it was only faced with determining the amount of damages.  Further, courts addressing issues analogous to the issues in this case have rejected *Woody's* analysis finding that bifurcation of coverage issues.  *See e.g. Walker*, 2018 WL 4462232 *2 (finding that all pertinent factors weighed in favor of bifurcation and staying discovery) and *Alvey*, 2017 WL 2798501 *2 (failure to stay discovery might result in needless discovery and added expense).

As addressed more fully in Allied World's Memorandum in Support of its Motion to Bifurcate, the insurers would be forced to incur significant expenses in conducting discovery on

7

a bad faith claim, which is likely to fail, if discovery is not stayed. As such, discovery on Plaintiffs' bad faith claim should be stayed pending the resolution of the breach of contract claims.

## CONCLUSION

For the reasons stated herein and more fully in the Memorandum in Support of Motion to Bifurcate, Defendant, Allied World Assurance Company (U.S.) Inc., respectfully requests that this Honorable Court enter an order bifurcating the breach of contract and bad faith claims and staying discovery on the bad faith claims pending the resolution of the breach of contract claim.

/s/ Cheryl L. Mondi

Peter E. Kanaris
Cheryl L. Mondi
One S. Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 474-1400
pkanaris@kshlaw.com
cmondi@kshlaw.com
*Attorneys for Defendant, Allied World Assurance Company (U.S.) Inc.*

Vincent P. Antaki (88675)
525 Vine Street, Suite 1500
Cincinnati, Ohio 45202
Phone: (513) 455-4031
Fax:    (513) 721-2553
vanktaki@reminger.com
*Attorney for Defendant, Allied World Assurance Company (U.S.) Inc.*

**CERTIFICATE OF SERVICE**

   I, Cheryl L. Mondi, an attorney, hereby certify that on the 5th day of November, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Stephen C. Coffaro | James M. Burd |
| Amanda B. Stubblefield | Edward M. O'Brien |
| Keating Muething & Klekamp | 100 Mallard Creek Road, Suite 250 |
| One East Fourth Street, Suite 1400 | Louisville, KY  40207 |
| Cincinnati, OH  45202 | *Counsel for Defendants Certain* |
| *Counsel for Plaintiff* | *Underwriters at Lloyd's, Global Specialty SE, Blackboard Specialty Insurance Co., and General Security Indemnity Company of Arizona* |

                 */s/ Cheryl L. Mondi*