UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| CROSSWATER CANYON, INC. and ARK ENCOUNTER, LLC<br><br>Plaintiffs,<br><br>-v-<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.) Inc.; CERTAIN UNDERWRITERS AT LLOYD'S; HDI GLOBAL SPECIALTY SE; BLACKBOARD SPECIALTY INSURANCE COMPANY; and GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA<br><br>Defendants. | Civil Action No. 2:19-cv-64-DLB-CJS<br><br>Judge David L. Bunning<br><br>**RULE 72(a) OBJECTIONS TO MAGISTRATE CANDACE J. SMITH'S ORDER DENYING BIFURCATION OF DISCOVERY** |

Defendant, Allied World Assurance Company (U.S.) Inc. ("Allied World"), by and through its attorneys and pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, respectfully requests that this Honorable Court review and reconsider the Order entered by Magistrate Judge Candace J. Smith denying Allied World's Motion to Bifurcate and Stay Discovery of the Alleged Bad Faith Claims of Plaintiffs.

**PREFATORY STATEMENT**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Allied World respectfully objects to the Order of Magistrate Judge Smith (R. 31) as clearly erroneous and contrary to law with respect to the following:

> **IT IS ORDERED** THAT Defendants' Motion to Bifurcate (R. 21; R. 24) is hereby **DENIED** to the extent that it seeks to stay and bifurcate for *discovery* purposes, Plaintiffs' bad faith claims from their breach of

> contract claims. To the extent Defendants seek to bifurcate for *trial* purposes, Plaintiffs' bad faith claims from their breach of contract claims, Defendants are free to present a renewed motion at an appropriate subsequent stage of litigation.

In ruling against bifurcation, Judge Smith misplaced reliance on *United Servs. Auto Ass'n v. Bult*, 183 S.W. 3d 181 (Ky. Ct. App. 2003) and *Foster v. American Fire & Cas. Co.*, 219 F. Supp. 3d 590 (E.D. Ky. 2016), which actually support Allied World's position here. In both cases, the courts bifurcated and tried the alleged breach of the insurance contract separately from the bad faith purported cause of action. Neither decision supports the taking of discovery on the bad faith claims before the Court or a jury has decided the breach of the insurance contract action. As addressed during the oral argument, judicial economy will not be served by proceeding with discovery on Plaintiffs' unidentified bad faith claim. Requiring the parties to conduct discovery on bad faith claims, which might never arises, prejudices the parties by forcing them to incur needless expenses and waste resources on unnecessary litigation. *Walker v. Seneca Ins. Co., Inc.*, 2018 WL 4462232 *2 (W.D. Ky. Sept. 17, 2018).

      A long line of well-established Kentucky precedent calls for the bifurcation and stay of discovery on bad faith claims until the resolution of the breach of contract issue. Plaintiffs brought suit under property insurance contracts issued by Allied World and the other Defendant property insurers (hereinafter collectively referred to as the "Insurer-Defendants"), seeking more than the indemnity payments made by the Insurer-Defendants participating in the program and separately alleges bad faith denial of those claimed additional benefits. A central coverage issue concerns whether the defective design and faulty workmanship exclusion bars Plaintiffs' claim for additional damages and whether Plaintiffs' claim include costs to improve land, which is not covered property. With respect to the breach of contract claim, discovery focuses on gathering the evidence from the contractors, engineers and witnesses of the event and will also include

discovery of the experts' opinions to address whether defective design and faulty workmanship caused the alleged damages sought.

The evidence central to the contract claim does not overlap in any meaningful way with the proof necessary for Plaintiffs to sustain their purported bad faith claim. Determining the cause of the alleged damage and whether the insurance contracts afford coverage for the claim are separate issues from the Insurer-Defendants' determination that the insurance contracts did not cover the damage. While contractors, engineers, and witnesses of the event will establish that Plaintiffs' claim for damage is barred by the defective design and land exclusions, these individuals do not have knowledge relative to Allied World's investigation and adjustment of the loss in accordance with the terms of the insurance contract. Similarly, the Defendant-Insurers' claim representatives will establish that the Defendant-Insurers investigated and adjusted Plaintiffs' claimed loss in accordance with the terms of the insurance contracts, but these individuals do not have information relative to the design of the subject road, the decision to not build the subject road in accordance with the plans, or the construction of the road. Further, they will not offer expert opinions as to the cause of the failure of the road. Therefore allowing the Plaintiffs to proceed with discovery regarding the bad faith claims would result in needless discovery and added expense.

This Court and others throughout Kentucky have routinely bifurcated and stayed discovery on bad faith claims until the resolution of the breach of contract claims. *Bruckner v. Sentinel Ins. Co.*, 2011 WL 589911 at *6 (E.D. Ky. Feb 10, 2011); *Honican v. Stonebridge Life Ins. Co*, 2005 WL 2614904 (E.D. Ky. Oct. 13, 2005); *Alvey v. State Farm Fire & Cas. Co.*, 2017 WL 2798501 (W.D. Ky. June 28, 2017); *Holloway v. Ohio Sec. Ins. Co.*, 2015 WL 6870141 (W.D. Ky. Nov. 6, 2015); *Graves v. Standard Ins. Co.*, 2015 WL 2453156 at *3 (W.D. Ky.

3

2015); *C.A. Jones Management Group v. Scottsdale Indemn. Corp.*, 2015 WL 1262219 at *2 (W.D. Ky. March 18, 2015); *Brantley v. Safeco Ins. Co.*, 2011 WL 6012554 at *2 (W.D. Ky. Dec. 1, 2011); and *Reynolds v. Safeco Ins. Co. of Am.*, 2007 WL 38348 *1 (E.D. Ky. Jan 5. 2007). The rationale is straightforward. A bad faith cause of action requires first that the insurance policy covers the alleged losses claimed. If no coverage exists, then as a matter of law, the bad faith claim fails. Even if coverage is found for Plaintiffs' alleged additional losses (which Allied World and the other insurers dispute), Plaintiffs must then prove that the Insurer-Defendants lacked a reasonable basis in law or fact for not paying the claims. Plaintiffs must establish that the Insurer-Defendants knew there was no reasonable basis for their coverage position or acted with reckless disregard. The discovery to address Plaintiffs' required proofs on the alleged bad faith is therefore irrelevant to the contract claim.

Accordingly, Allied World requests that its objection to the Order of Judge Smith be granted and that discovery on the purported bad faith claim be bifurcated and stayed.

## STANDARD UNDER RULE 72(a)

Rule 72(a) provides in pertinent part: "decisions of the magistrate judge may be appealed to the district court for review on a standard of clear error contrary to law." Fed. R. Civ. P. 72(a). "The district judge to whom the case was assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

## ARGUMENT

**I.  Judge Smith Erred by not Bifurcating and Staying Discovery on the Bad Faith Claims Pending the Resolution of the Breach of Contract Claim**

As Judge Smith stated in her opinion,

> Federal Rule of Civil Procedure 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."… "Only one of these criteria needs to be met to justify bifurcation."

Here, although the Insurer-Defendants satisfied numerous criteria to justify bifurcation, Judge Smith denied the motion. Bifurcating discovery would avoid prejudice, expedite and economize the proceedings. Because Judge Smith denied the Insurer-Defendants' Motion to Bifurcate, the parties will be forced to incur costs and expend unnecessary resources for discovery that will not be necessary if this Court determines that the defective design and land exclusions bar Plaintiffs' breach of contract claim.

Plaintiffs seek to depose Allied World and the other Defendant-Insurers' claim representatives relative to issues regarding the Defendant-Insurers' processes in making their coverage determinations. None of the issues relating to the Defendant-Insurers coverage determinations are relevant, if the Court determines that the policies do not provide coverage for Plaintiffs' claim. Thus, the Court's failure to bifurcate the bad faith claim would require the parties to engage discovery and potentially motion practice relative to matters not at issue in determining whether the defective design and land exclusions bar Plaintiffs' claim.

In rendering her decision, Judge Smith relied on *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181 (Ky. Ct. App. 2003) for the proposition that Plaintiffs can assert a bad faith claim for Insurer-Defendants' initial denial, but later partial payment of their insurance claim. Simply put, *United Servs.* can be easily distinguished from Plaintiffs' claim and actually supports the Insurer-Defenants' position as the court tried the breach of contract claims in June 1999 and the bad faith claims on October 2001. Thus, the court did not try the claims together.

5

In *United Servs. Auto*, the insureds made claims under two separate insurance policies. After the Bults' daughter was critically injured in a one car automobile accident driven by the Metcalfes' son, the Bults made a claim under the Metcalfes' policy and a claim under their own policy. The Bults also made a claim against the Metcalfes for negligence. The insurer accepted liability under both policies and, unlike Plaintiffs' claims in this case, there was no dispute as to whether the policies provided coverage for the claim. On the morning of trial, the Bults and Metcalfes resolved the negligence claim and the Metcalfes agreed to assign to the Bults any bad faith claim that they had against the insurer. 183 S.W.2d at 185. Over two years later, the Bults proceeded to trial on the bad faith claims. *Id.*

In finding that the insurer had not committed bad faith, the court stated that evidentiary threshold to establish a bad faith claim is high. The court explained:

> [e]vidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absence such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. **Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith**. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.
>
> A review of the evidence presented by the [insureds] reveals a complete absence of the type of conduct required to meet this standard.

*Id.* at 186 (emphasis added). Here, Plaintiffs argued for the first time at the oral argument that they would proceed with a bad faith claim for the Insurer-Defendants' alleged untimely payments of the covered damages. As addressed below, the payments were not untimely. Nevertheless, even for the sake of argument if it were untimely, *United. Servs.* establishes that an untimely payment does not support a claim for bad faith.

6

As demonstrated by the evidence submitted by Plaintiffs in Response to the Motion, the Insurer-Defendants' did not delay in making a payment for the portion of damages, which it determined came within the exception to the design deficiency exclusion. On March 1, 2018, Tim Lehman sent correspondence to the insured, Crosswater Canyon, Inc. ("Crosswater Canyon"), stating that the Insurer-Defendants had sufficiently completed their investigation to determine coverage. Mr. Lehman stated:

> **[b]ased on the facts gathered to date**, including the opinions of EFI, the Insurers must regrettably advise that the property insurance contracts do not provide coverage. The property insurance contracts do not cover land and as such the erosion of land is excluded from coverage. Further, the exclusion for correcting design deficiencies or specifications, faulty materials or faulty workmanship of the service road applies to bar coverage. As more fully explained in this letter, the Insurers deny any and all liability under the property insurance contracts.

R. 25-1 **(emphasis added)**. The Insurer-Defendants' further stated:

> [s]hould you have any other documents or information, which you feel may be applicable or relevant to this matter, please immediately forward it to my attention. Please advise that the Insurers will review any such additional documents or information submitted by Crosswater Canyon under a full reservation of rights under their respective policies and at law, including the right to request additional documentation.

Prior to the Insurer-Defendants' issuing their coverage position, Crosswater Canyon had not produced any invoices in support of its claim. After receiving the Insurer-Defendants' response, Crosswater Canyon for the first time submitted documents regarding damages under a cover letter dated March 9, 2018. Crosswater stated:

> [t]o date the total incurred outside contractor cost is $669,670.57. The internal labor costs to date are $15,801 for a total of loss incurred to date of $685,471,57. **I am enclosing supporting documentation of the expenses** that constitute the amount of Loss to date: $685,471.57.

R 25-2 **(emphasis added)**. Thus, when the Insurer-Defendants issued their initial coverage position, Plaintiffs had not yet submitted these invoices to the Insurer-Defendants, and therefore,

7

there was no basis for the Insurer-Defendants to determine that any portion of the claim fell within the exception to the exclusion.

After receiving the documentation of expenses, the Insurer-Defendants' adjustment team reviewed the documents to determine if any of the claimed costs came within the exception to the faulty workmanship and deficient design exclusions. After reviewing the information submitted, the Insurer-Defendants sent correspondence on March 25, 2018 stating that they would make payments for the damages coming within the exception to the exclusion, but they could not determine whether there was coverage for any portion of certain invoices:

> [a]t your request, the Insurers have asked us subject to their continuing reservation of rights to review the invoices submitted by Crosswater to determine whether any of the claimed costs come within the exceptions to the exclusions. I have attached a spreadsheet which shows the analysis of the invoices. As you can see from the spreadsheet, Crosswater has not submitted sufficient information with all invoices for the Insurers to determine, if there is coverage for any portion of certain invoices. With respect to those line items and subject to their continuing reservation of rights, the Insurers request that Crosswater submit additional information so that the Insurers can determine whether the policies afford coverage for any of the costs incurred under these invoices.
>
> Based on the information submitted to date, the Insurers have calculated that the amount of repair costs coming within the exception to the exclusion totals $17,760.51 after the application of the $25,000 deductible.

R. 25-3. Thus, it is clear that the Insurer-Defendants timely paid the claim after Plaintiff submitted invoices supporting their alleged claim. Moreover, although Plaintiffs have the burden to establish that their claimed damages come within the exception to the exclusion, Plaintiffs failed to submit additional information to the Insurer-Defendants establishing that the claimed damages came within the exception. *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 715 (W.D. Ky. 2010) and *Travelers Prop. Cas. Co. of Am. v. B & W Res., Inc.*, 2006 U.S. Dist. LEXIS 78311 *8 (E.D. Ky. 2006). Without any support, Plaintiffs asserted for the first time at

8

the oral argument that because the Insurer-Defendants considered additional information submitted by Plaintiffs only after Insurer-Defendants sent Plaintiffs its March 1, 2018 position letter, Defendants somehow committed bad faith.

Judge Smith also relied on *Foster v. American Fire & Cas. Co.*, 219 F. Supp. 3d 590, 593 (E.D. Ky. 2016), which also supports the Insurer-Defendants' position, as this Court bifurcated and stayed discovery on the bad faith claims until the resolution of underinsured motorist benefits claim. Following *United Servs. Auto* and *Foster*, Plaintiffs' bad faith claims should be bifurcated and stayed until the resolution of the breach of contract claims.

At the oral argument, Plaintiffs cited to *Foster*, 219 F. Supp. 3d 590 and *Smith v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 157732 (W.D. Ky. Nov. 23, 2015), which purportedly supported its position. As with *Foster*, *Smith* also supports the Insurer-Defendants' argument that the claims should be bifurcated. The insurer settled the insured's breach of contract claim and then the insured proceeded with its bad faith claim. The court entered summary judgment on the bad faith claim stating:

> at most Smith has shown that Liberty Mutual was slow in settling Smith's claim. **Kentucky courts regularly find that a delay in payment, without more, does not justify submitting a bad faith claim to a jury**…Smith has received all of the benefits she is entitled to and has not demonstrated that Liberty Mutual acted with evil motive or malice.

*Id.* at *7-8 (emphasis added).

For the first time, during the argument, Plaintiffs erroneously asserted that resolution of the breach of contract action would not resolve their bad faith claims. Contrary to well-established Kentucky law, Plaintiffs argued that they would proceed with a bad faith claim against the Insurers for its delay in paying Plaintiffs' claim. Plaintiffs did not make this argument in its briefing and did not allege in their Complaint that the Insurer-Defendants

9

somehow committed bad faith by paying a portion of the claim. Rather, Plaintiffs alleged that the basis for their bad faith claims is that the Insurer-Defendants did not provide full coverage for the loss. Plaintiffs have not alleged that the Insurer-Defendants acted in bad faith when they made payments to Crosswater Canyon. Specifically, Plaintiffs alleged as follows:

> 47. There was, and is, no reasonable basis in law or fact for the Defendants' failure and refusal to provide full coverage for Plaintiffs' covered loss.
>
> 48. Defendants' coverage position was not, and is not, legitimate and its use of an illegitimate coverage position to avoid or delay full payment for Plaintiffs' covered loss is improper and constitutes bad faith.
>
> 49. Defendants either know that there is no reasonable basis for their coverage position or Defendants have acted with reckless disregard as to whether a reasonable basis exists, an therefore, Defendants' actions are outrageous.

Thus, a determination that the defective design and land exclusions bar coverage for Plaintiffs' claim would resolve the bad faith claims. As such, the bad faith claims should be bifurcated to avoid prejudice and for purposes of judicial economy.

Under Kentucky law, "an insured's claim of bad faith must fail where the claim is 'fairly debatable' on the law or the facts." *Cowan v. Paul Revere Life Ins. Co.*, 30 Fed. Appx. 384 (6th Cir. 2002); *Philadelphia Indemn. Ins. Co. v. Youth Alive, Inc.*, 857 F. Supp.2d 647, 659 (W.D. Ky. 2012). "An insurer is entitled to debate a claim regardless of whether the debate concerns a matter of fact or one of law." *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889-90. In *Philadelphia Indemn.*, 857 F.Supp. 2d at 659, the court held that although it disagreed with the insurer's position on coverage, the law was fairly debatable, and therefore, a bad faith claim could not be maintained. The court stated that the fact that the insurer "did not ultimately prevail is neither determinative of whether it acted with bad faith nor

whether its contention raised a fairly debatable issue." *Id*. Thus, for the sake of argument, even if the Court found coverage for Plaintiffs' claim, which Allied World vigorously disputes, Plaintiffs could not sustain a bad faith claim as coverage for the claim, is at a minimum, fairly debatable.

## CONCLUSION

WHEREFORE, Allied World Assurance Company (U.S.) Inc. respectfully request that this Honorable Court grant their objection to the Order of Magistrate Judge Candace J. Smith and bifurcate and stay discovery on the purported bad faith causes of action asserted by Plaintiffs.

/s/ Cheryl L. Mondi

Peter E. Kanaris
Cheryl L. Mondi
151 North Franklin St., Suite 2500
Chicago, Illinois 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
Email: pkanaris@hinshawlaw.com
cmondi@hinshawlaw.com

Vincent P. Antaki (88675)
525 Vine Street, Suite 1500
Cincinnati, Ohio 45202
Phone: (513) 455-4031
Fax: (513) 721-2553
vanktaki@reminger.com

*Attorneys for Defendant, Allied World Assurance Company (U.S.) Inc.*

11

## CERTIFICATE OF SERVICE

I, Cheryl L. Mondi, an attorney, hereby certify that on the 27th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Stephen C. Coffaro<br>Amanda B. Stubblefield<br>Keating Muething & Klekamp<br>One East Fourth Street, Suite 1400<br>Cincinnati, OH  45202<br>**Counsel for Plaintiff** | James M. Burd<br>Edward M. O'Brien<br>Wilson Elser Moskowitz Edelman & Dicker, LLP<br>100 Mallard Creek Road, Suite 250<br>Louisville, KY  40207<br>***Counsel for Defendants Certain Underwriters at Lloyd's, Global Specialty SE, Blackboard Specialty Insurance Co., and General Security Indemnity Company of Arizona*** |

                                                                <u>/s/ Cheryl L. Mondi</u>